**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

RAFAEL HERNANDEZ, individually and on behalf of all others similarly situated,

Case No. 1:25-cv-24568-PCH

Plaintiff,

v.

SAZERAC COMPANY, INC.,

Defendant.
_______________________________________/

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Rafael Hernandez, individually and on behalf of all others similarly situated, respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 23, for an order certifying the proposed Class defined below, appointing Plaintiff as class representative, appointing Christopher Gold, Esq. and Gold Law, PA as class counsel, and directing the parties to confer on a proposed class notice plan. In support, Plaintiff submits this incorporated memorandum of law.

## I. INTRODUCTION

This is the fourth time a federal court has been asked to certify a class of consumers deceived by the same company's same scheme: dressing a cheap malt-based beverage in the trade dress of a famous distilled spirit. Every court to decide the question has certified. The Northern District of California certified a class of California purchasers of Sazerac's Fireball Malt. The Southern District of New York certified a class of New York purchasers of Southern Comfort malt and classes of New York purchasers of Fireball Malt — the very product at issue here — and

Parrot Bay malt, another look-alike knockoff product in Defendant's portfolio. Sazerac ran its full defense playbook in each case, and certification was granted every time.

The claim here is a single count under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"). The theory is inherently classwide: a uniform look-alike label, an objective reasonable-consumer standard requiring no individualized reliance, and one classwide benefit-of-the-bargain damages formula. As the Supreme Court has observed, "Predominance is a test readily met in certain cases alleging consumer…fraud[.]" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). This is that case.

Plaintiff files this motion now in an abundance of caution to comply with the current case-schedule deadline. On July 14, 2026, Plaintiff moved to extend the case deadlines because of a personal family emergency of the undersigned counsel and because Defendant has not yet produced discovery as to which the parties are still working through Defendant's objections. DE 25. Filing now is proper: "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). This is the paradigm case for early certification: identical classes, against this same defendant, over the same, misleading trade dress, have already been certified multiple times over, and the FDUTPA theory turns on objective proof already in the record.

**A. Background**

*The Product.* Sazerac manufactures Fireball Cinnamon Whisky ("Fireball Whisky"), a cinnamon-flavored distilled spirit sold since 1984 that Sazerac admits has achieved nationwide fame and popularity. Compl. ¶¶ 1, 18; DE 17 ("Answer") ¶¶ 1, 18. In 2020, Sazerac introduced "Fireball Malt" — a malt-based beverage that looked and tasted like Fireball Whisky but contained no whisky and half the alcohol. Compl. ¶ 22; Answer ¶ 22. Sazerac admits that, "as sold in Florida,

Fireball Cinnamon malt beverage has an ABV of 16.5% and that Fireball Cinnamon Whisky has an ABV of 33%," and that the malt product contains no whisky. Compl. ¶¶ 23, 44; Answer ¶¶ 23, 44.

*The uniform trade dress.* Sazerac admits that both products present "the same golden-caramel color glowing through transparent 50 mL or 100 mL distilled spirit bottles sealed with red caps, with a similarly colored label that resembles burnt paper, with printed text in a similar typeface, and an image of a red dragon splitting a fireball, set between the words 'red' and 'hot.'" Compl. ¶ 27; Answer ¶ 27. The Complaint further alleges that, according to Sazerac's own website, the only visual difference is whether the small print reads "Cinnamon Whisky" or only "Cinnamon." Compl. ¶¶ 28, 33.

*The channel separation.* Plaintiff alleges that Fireball Malt is sold at gas stations, convenience stores, and grocery stores where Florida's liquor laws bar the sale of distilled spirits. Compl. ¶¶ 39, 44. Sazerac admits its "Cinnamon malt beverage is sold at retail locations that do not sell distilled spirits." Answer ¶ 39. Plaintiff alleges the consequence: never sold side by side, the products cannot be compared at the register, and the consumer naturally infers the famous whisky brand is in the bottle. Compl. ¶ 39.

*The named Plaintiff.* Rafael Hernandez is a Miami-Dade County consumer who "has purchased Fireball Whisky in large bottles from liquor stores and is familiar with the Fireball Whisky branding, packaging, and labeling." Compl. ¶¶ 16, 52–54. He unknowingly bought miniature bottles of Fireball Malt at gas stations, believing them to be Fireball Whisky because they "displayed all of the same branding elements and trade dress as the original Fireball Whisky product." *Id.* ¶¶ 55–57. Had he known, he "would not have purchased Fireball Malt, or at a minimum, would have paid less for the product." *Id.* ¶ 61.

*The procedural posture.* This Court denied Sazerac's motion to dismiss on March 5, 2026, rejecting the FDUTPA safe-harbor defense — the only ground raised. DE 16. The Court held that Plaintiff's claim challenges "Defendant's practice of marketing Fireball Malt alongside Fireball Whisky using similar trade dress, which Plaintiff alleges creates consumer confusion," *Id.*, at 5, and recognized Plaintiff's theory that the labels are "'comparatively deceptive' when considered alongside the longstanding Fireball Whisky labels," *id.*, at 4. The Court adopted as "well-reasoned," *id.*, at 5, the reasoning of *Puig v. Sazerac Co., Inc.*, 2024 WL 3046248, at *5 (M.D. Fla. June 18, 2024) and *McKay v. Sazerac Co., Inc.*, 2023 WL 3549515, at *4 (N.D. Cal. May 17, 2023). Sazerac answered on March 19, 2026. DE 17.

*The proposed Class.* Plaintiff moves to certify a proposed Class defined as:

> All persons who purchased Fireball Malt in the State of Florida during the period beginning four years prior to the filing of this action and the date of an order granting class certification.

## II. THREE COURTS HAVE CERTIFIED CLASSES AGAINST SAZERAC OVER THESE LOOK-ALIKE LABELS

*First*, on September 18, 2025, Judge Karas certified Rule 23(b)(3) classes of New York purchasers of Fireball Malt — the identical product at issue here — and Parrot Bay malt, a companion look-alike product. *Pizzaro v. Sazerac Co.*, Nos. 23-CV-2751 (KMK), 23-CV-4323 (KMK), 2025 U.S. Dist. LEXIS 187959, 2025 WL 2682673 (S.D.N.Y. Sept. 18, 2025). On liability: "If a jury finds that the combination of these aspects would mislead a reasonable consumer to think they are buying whisky or rum instead of malt, the issue is resolved for the entire class without an individual inquiry." *Id.* at *15. On materiality: "the question here is whether materiality can be determined on a class-wide basis. Here, the answer is yes." *Id.* at *14.

*Second*, Judge Subramanian certified a New York class of Southern Comfort malt purchasers — the same scheme, a different brand. *Andrews v. Sazerac Co.*, No. 23-cv-1060 (AS),

2025 U.S. Dist. LEXIS 397 (S.D.N.Y. Jan. 2, 2025). *Andrews* held: "If a jury finds that the combination of these elements would mislead a reasonable consumer to think that they were buying Southern Comfort whiskey, instead of its malt beverage, then the issue is resolved for the entire class. There's no 'individual inquiry' necessary." *Id.*, at *18-19. The court called objective-test consumer claims "ideal for class certification." *Id.*, at *8 (quoting *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013 WL 7044866, at *10 (E.D.N.Y. July 18, 2013)).

*Third*, the Northern District of California certified a class in *Myers*, Sazerac's Fireball Malt case, on February 12, 2025. That sealed certification order is an admitted fact in this record. Compl. ¶ 66; Answer ¶ 66.

These are not merely analogous cases. They involve the same defendant, the same product (or the same scheme applied to a sister brand), the same uniform trade dress, and materially identical objective consumer-protection standards. Sazerac has already litigated every certification argument available here, and every court to rule has certified.

## III. LEGAL STANDARD

A plaintiff seeking certification must satisfy Rule 23(a)'s four requirements — numerosity, commonality, typicality, and adequacy — and, for a damages class, Rule 23(b)(3)'s predominance and superiority requirements. The movant bears the burden of affirmatively establishing each element on the current record, and the Court must conduct a rigorous analysis of that showing. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233–34 (11th Cir. 2016). Plaintiff does not ask the Court to resolve any doubt in his favor; he makes the affirmative showing Rule 23 requires.

## IV. THE PROPOSED CLASS SATISFIES RULE 23(a)

### A. Numerosity — Rule 23(a)(1)

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this Circuit, "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *accord Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).

The Class comfortably clears that bar. Fireball Malt "is sold in hundreds of retail locations across Florida (including gas stations, convenience stores, and grocery stores), and on information and belief thousands of consumers in Florida have purchased Fireball Malt during the relevant period." Compl. ¶ 72; *see also* Compl. ¶¶ 45, 50. Sazerac admits Fireball Malt is sold in Florida through retail locations that do not sell distilled spirits, Answer ¶¶ 23, 39 — which is the mass-market convenience channel. Joinder of purchasers of a low-cost product sold through hundreds of outlets statewide over multiple years is self-evidently impracticable. *See Cardenas v. Toyota Motor Corp.*, No. 18-22798-CIV, 2021 WL 5811741, at *3 (S.D. Fla. Dec. 6, 2021).

### B. Commonality — Rule 23(a)(2)

Commonality requires "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). The common question here is whether Sazerac's alleged practice of "marketing Fireball Malt alongside Fireball Whisky using similar trade dress," DE 16 at 5 — a practice whose every trade-dress element Sazerac has admitted, Answer ¶ 27 — is likely to deceive an objectively reasonable consumer.

That question is common because FDUTPA's standard is objective. "[A] party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. 1st DCA 2000)). The Eleventh Circuit has twice affirmed this point. *See Tershakovec v. Ford Motor Co.*, 79 F.4th 1299, 1306–08 (11th Cir. 2023) ("Because a FDUTPA plaintiff needn't prove that he or she relied on any alleged misstatement, Ford's reliance-based predominance objection fails"); *Carriuolo*, 823 F.3d at 989 ("This consistency is also sufficient to establish the commonality requirement under Rule 23(a)(2).").

The common questions — whether the admitted look-alike trade dress is likely to mislead a reasonable consumer; whether it was material; whether the conduct violates FDUTPA; and the classwide damages measure — will each be answered once, for everyone.

**C. Typicality — Rule 23(a)(3)**

"A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322-23 (11th Cir. 2008) ("[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.") (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004)); *Williams*, 568 F.3d at 1357 (typicality "may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories").

Plaintiff's claim is identical to the Class's claims. Plaintiff, "like all Class members, purchased Fireball Malt in Florida and was deceived by the uniform misleading packaging and labeling"; he asserts the same single FDUTPA count arising from the same course of conduct, and

"no unique defenses apply to Plaintiff." Compl. ¶ 74. Because every class member bought the same product bearing the same admitted trade dress, proof of Plaintiff's claims will prove the class's claims.

**D. Adequacy of Representation — Rule 23(a)(4)**

Adequacy asks "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Only a "fundamental" conflict "going to the specific issues in controversy" defeats adequacy. *Carriuolo*, 823 F.3d at 989 (quoting *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000)).

Plaintiff is an adequate representative. He "has purchased Fireball Whisky in large bottles from liquor stores and is familiar with the Fireball Whisky branding, packaging, and labeling," Compl. ¶ 54, and can testify concretely to what he bought, where, and why the trade dress deceived him. *Id.* ¶¶ 55–61. His interests align with the Class — the same price-premium recovery on the same theory. Plaintiff is prepared to sit for deposition and to verify his discovery responses personally.

Proposed class counsel is likewise adequate. Christopher Gold of Gold Law, P.A. is experienced in prosecuting consumer protection and complex class action cases, including false advertising cases. Compl. ¶ 75. Counsel has vigorously prosecuted this action — winning a contested motion to dismiss outright — and will continue to commit the resources necessary to represent the Class.

## V. THE PROPOSED CLASS SATISFIES RULE 23(b)(3)

### A. Common Issues Predominate

#### 1. FDUTPA's Objective Standard Makes Liability a Classwide Question

FDUTPA claims have three elements: a deceptive act or unfair practice, causation, and actual damages. DE 16 at 2–3 (citing *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *11 (S.D. Fla. Aug. 18, 2021)). Every element is provable with common evidence.

Deception is measured objectively. "Because a plaintiff asserting a FDUTPA claim 'need not show actual reliance on the representation or omission at issue,' *Davis*, 776 So. 2d at 973, the mental state of each class member is irrelevant." *Carriuolo*, 823 F.3d at 985–86. This district applies that rule to consumer labels. "The FDUTPA claim rises or falls based predominantly on issues for which classwide proof is appropriate; an answer to the paramount question of whether Yo-Plus works as advertised will directly and substantially impact every class member's liability case and entitlement to relief under the FDUTPA." *Fitzpatrick*, 263 F.R.D. at 701. Here, the paramount question is whether the admitted look-alike trade dress would mislead a reasonable consumer into believing Fireball Malt is Fireball Whisky — one question, one classwide answer.

#### 2. The Uniform Trade Dress Itself Is Classwide Evidence of Deception

The predominant liability evidence is the trade dress itself — and its elements are admitted. Sazerac admits every element of the shared trade dress, Answer ¶ 27; admits the look-alike product contained no whisky and half the alcohol, *id* ¶¶ 22, 23, 44; and admits the channel placement — sale "at retail locations that do not sell distilled spirits," *id* ¶ 39 — which, Plaintiff alleges, prevents side-by-side label comparison. Compl. ¶ 39. Because every class member encountered the same combination of admitted elements, the deception question is identical for all. That is why *Carriuolo* affirmed: "Because every class member here purchased or leased the same model

vehicle with the same Monroney sticker attached, it does not matter that there may have been differences among the class members' subjective reliance." *Carriuolo*, 823 F.3d at 986.

The best evidence of what a consumer sees at the shelf is the product itself: under FDUTPA, deception is measured by the net impression the label and packaging create on a reasonable consumer. *Puig v. Sazerac Co., Inc.*, No. 2:23-cv-856-JES-NPM, 2024 U.S. Dist. LEXIS 164086, at *7 (M.D. Fla. Sep. 12, 2024) (denying dismissal because the "net impression" created by the packaging of these same two products plausibly misleads reasonable consumers); *see also Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 443 (E.D.N.Y. 2021) (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself."); *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 274 n.20 (E.D.N.Y. 2019) (finding that the plaintiffs had "sufficiently raised the issue of materiality" by reference to the defendant's internal documents and the plaintiffs' own reliance, and "caution[ing] against conducting such a detailed analysis into [materiality] at [the class certification] stage, which seems better suited to a merits analysis"); *Makaeff v. Trump Univ., LLC*, No. 3:10-cv-0940-GPC-WVG, 2014 LX 44469, at *33 (S.D. Cal. Feb. 21, 2014) ("In determining whether a statement is misleading under the [FAL], the primary evidence in a false advertising case is the advertising itself.")).

If this action is certified, the jury will see the uniform trade dress on Sazerac's product and will decide for itself if it is misleading — as the *Puig* court held on the identical Fireball theory, "the issue [in FDUTPA claims] is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Puig v. Sazerac Co.*, No. 2:23-cv-856, 2024 U.S. Dist. LEXIS 164086, at *11

(M.D. Fla. Sept. 12, 2024) (quoting *State, Off. of Att'y Gen. v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004)).

No extrinsic survey of consumer deception is required. "If the advertisement explicitly states or clearly and conspicuously implies a claim, the court need not look to extrinsic evidence to ascertain whether the advertisement made the claim." *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1189 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009); *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 391–92 (1965) ("Nor was it necessary for the Commission to conduct a survey of the viewing public before it could determine that the commercials had a tendency to mislead . . . ."); *Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975) (per curiam) ("Consumer testimony, although sometimes helpful, is not essential."); *see also* Fla. Stat. § 501.204(2) ("It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act[.]").

**3. Damages Issues Cannot Defeat Predominance, and FDUTPA's Benefit-of-the-Bargain Measure Is Uniform Classwide**

*First*, even if damages required individual calculation, that would not defeat certification. "The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'" *Brown*, 817 F.3d at 1239 (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:54 (5th ed.)); *accord Carriuolo*, 823 F.3d at 988 ("[I]ndividualized damages calculations are insufficient to foreclose the possibility of class certification, especially when, as here, the central liability question is so clearly common to each class member.").

*Second*, FDUTPA's damages measure is itself a single, uniform formula. "[T]he measure of actual damages is the difference in the market value of the product or service in the condition

in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984); *accord Rollins, Inc. v. Butland*, 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006).

*Third*, the benefit-of-the-bargain measure affirmatively supports certification: it produces one number per unit for every purchaser. As the Eleventh Circuit held in affirming FDUTPA certification: "Unlike the calculation of an individual consumer's direct pecuniary loss, which would limit the plaintiff to the difference of what she paid and the actual value received, the FDUTPA 'benefit of the bargain' model provides a standardized class-wide damages figure because the plaintiff's out-of-pocket payment is immaterial." *Carriuolo*, 823 F.3d at 986–87. "The injury occurs at the point of sale because the false statement allows the seller to command a premium on the sales price." *Id.*

The Complaint pleads the operative damages formula — market value as represented (whisky at 33% ABV) minus market value as delivered (a no-whisky malt beverage at 16.5% ABV) — and alleges that "[e]conomic analyses can be performed to quantify this price premium on a class-wide basis" because "the price of Fireball Malt was maintained at a level that reflects the brand value of Fireball Whisky, which would not have been possible had Fireball Malt been marketed truthfully as a malt beverage." Compl. ¶ 91; *see* Compl. ¶¶ 46–49, 60–61. Benefit-of-the-bargain damages owed to the Class here—approximately half the price charged for Fireball Malt containing approximately half the amount of alcohol as Fireball Whisky—will be easily calculated from real-world Florida pricing and actual sales volumes produced by Defendant in discovery. The model measures the additional value that the deceptive trade dress commanded, matching the liability theory, and will be executed on sales data produced in discovery.

**B. A Class Action Is Superior**

Superiority is at its apex where individual claims are worth a few dollars each. “The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.” *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). As this Court wrote in *Fitzpatrick*, “The amount in controversy for any individual plaintiff (something in the range of one dollar per purchase) is simply too insignificant to make the claim worth pursuing for any litigant or attorney . . . .” *Fitzpatrick*, 263 F.R.D. at 702. The premium overpaid on a miniature bottle is a fraction of a small purchase price. Compl. ¶ 76 (individual injury “relatively small, making individual litigation economically infeasible”). No rational consumer will litigate it alone. *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692–93 n.2 (S.D. Fla. 2010) (“In many instances, if consumers cannot attain class certification, they cannot pursue their claim”).

Concentrating Florida purchasers’ claims in a Florida forum under a Florida statute presents no manageability difficulty, and the objective, purchase-based class definition gives the Class definite boundaries.

**VI. SISTER-COURT CERTIFICATIONS SUPPORT CERTIFICATION HERE**

The Supreme Court “would expect federal courts to apply principles of comity to each other’s class certification decisions when addressing a common dispute.” *Smith v. Bayer Corp.*, 564 U.S. 299, 316–17 (2011). Comity of this kind requires “a court to pay respectful attention to the decision of another judge in a materially identical case[.]” *Smentek v. Dart*, 683 F.3d 373, 377 (7th Cir. 2012).

Courts in this district honors that principle. In certifying consumer classes against Wells Fargo and Comerica, a court in this district found a sister court's certification of a materially identical class "instructive," observing that the defendant there had likewise "insisted that individual issues predominated" and lost because the "challenged practice is a standardized one applied on a routine basis to all customers." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 649 (S.D. Fla. 2015).

Respectful attention here all points one way. Every court to examine Sazerac's malt look-alike labels has certified. *Pizzaro* (classes covering Fireball Malt — the identical product at issue here — and the companion Parrot Bay malt product); *Andrews* (the identical scheme, Southern Comfort brand); and *Myers* (Answer ¶ 66). Sazerac litigated the same defenses in each — label variations, individualized-deception arguments, and supply-side and fit attacks on the damages model — and none of those defenses defeated certification. Nothing suggests a different result under FDUTPA, whose objective standard parallels New York's — and, under *Carriuolo* and *Tershakovec*, is more emphatic still that reliance inquiries have no place in predominance.

**VII. CERTIFICATION NOW IS PROPER; THE ORDER REMAINS SUBJECT TO REVISION AFTER DISCOVERY**

Rule 23 does not make certification wait for the close of discovery. Indeed, Rule 23 directs certification "at an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), and preserves the Court's power to revisit it: "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

Plaintiff does not ask the Court to certify conditionally or to defer any part of the Rule 23 analysis; the affirmative showing *Brown* requires is made now — an admitted uniform trade dress,

an objective statutory standard, a pled and judicially accepted classwide damages methodology, and three sister-court certifications. Rule 23(c)(1)(C) means certification today costs nothing in flexibility; the Court retains full authority to refine the class definition or period as discovery arrives.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order:

1. Certifying the Class defined herein;

2. Appointing Plaintiff Rafael Hernandez as class representative;

3. Appointing Christopher Gold, Esq. and Gold Law, PA as class counsel;

4. Directing the parties to confer and submit a proposed class notice plan under Federal Rule of Civil Procedure 23(c)(2)(B) within a time the Court deems appropriate; and

5. Granting any further relief the Court deems just and appropriate.

Dated: July 17, 2026

Respectfully submitted,

*/s/ Christopher Gold*
Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, P.A.**
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Class.*