**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

RAFAEL HERNANDEZ, individually and on behalf of all others similarly situated,

Plaintiff, No. 1:25-cv-24568-PCH/LFL

v.

SAZERAC COMPANY, INC.,

Defendant.
_______________________________________/

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Rafael Hernandez moves under Federal Rules of Civil Procedure 26 and 37 and Local Rule 26.1(g) for an order compelling Defendant Sazerac Company, Inc. to serve amended answers and to produce documents responsive to five categories of discovery that Sazerac refused based on the same recycled, boilerplate objections: (1) the sales, pricing, cost, and profitability data that are the inputs to Plaintiff's class-wide damages model; (2) a physical inspection of Defendant's products with the allegedly deceptive trade dress that constitute the primary evidence for the jury of the consumer deception alleged; (3) development, business-case, executive-approval, competitive-analysis, and channel-strategy records for the deceptive product and trade dress at issue that was marketed uniformly throughout the country without Defendant's unilateral and arbitrary limitations to "labeling" and "as sold in Florida"; (4) the discovery and expert analyses from parallel certified class actions challenging the identical products and trade dress as in this case; and (5) Sazerac's regulatory-submission and consumer-confusion records, including its dealings with the federal Alcohol and Tobacco Tax and Trade Bureau, on which its principal defense depends.

The interrogatories and requests in dispute, with Sazerac's verbatim responses, appear in the accompanying Exhibit A. As shown below, Sazerac's own verified answers place the withheld cost and pricing data squarely in issue, and its confidentiality concerns are resolved by the protective order the parties are already negotiating.

## I. BACKGROUND

This is a single-count action under the Florida Deceptive and Unfair Trade Practices Act on behalf of a class of Florida consumers. Plaintiff alleges that Sazerac dressed a cheap malt beverage, Fireball Cinnamon ("Fireball Malt"), in trade dress identical to its iconic distilled spirit, Fireball Cinnamon Whisky ("Fireball Whisky"), and placed it in retail outlets that cannot sell spirits so that consumers would purchase it believing they are buying the whisky. In denying Sazerac's motion to dismiss, this Court held that the claim challenges Sazerac's "practice of marketing Fireball Malt alongside Fireball Whisky using similar trade dress," and that the labels are "comparatively deceptive" when viewed against the longstanding whisky packaging. [ECF No. 16 at 4-5.] That ruling defines relevance here: the development, marketing, channel, pricing, and consumer-confusion record for both products is the heart of the case.

Sazerac served its responses and objections on June 4 and 5, 2026. To nearly every request touching sales, pricing, cost, the parallel actions, or the regulatory record, Sazerac interposed the identical litany — "overly broad, unduly burdensome, not proportional . . . not relevant . . . highly confidential" — with no explanation tied to any particular request, and it produced nothing. Yet the withheld financial data is the input to Plaintiff's damages model. FDUTPA damages are the price premium the deception commanded: "the difference in the market value of the product . . . in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016) (*quoting Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)). Plaintiff's expert must measure that premium from Sazerac's actual Florida sales volumes, prices, and costs for both products — data only Sazerac has.

Likewise, the primary evidence of the consumer deception alleged are the products themselves. *See Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 443 (E.D.N.Y. 2021) (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself."); *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 274 n.20 (E.D.N.Y. 2019) (finding that the plaintiffs had "sufficiently raised the issue of materiality" by reference to the defendant's internal documents and the plaintiffs' own reliance, and "caution[ing] against conducting such a detailed analysis into [materiality] at [the class certification] stage, which seems better suited to a merits analysis"); *Makaeff v. Trump Univ., LLC*, No. 3:10-cv-0940-GPC-WVG, 2014 LX 44469, at *33

(S.D. Cal. Feb. 21, 2014) ("In determining whether a statement is misleading under the [FAL], the primary evidence in a false advertising case is the advertising itself.")). Those physical products must be available for the jury to view at trial so they can determine "the net impression the label and packaging create on a reasonable consumer." *See Puig v. Sazerac Co., Inc.*, No. 2:23-cv-856 (M.D. Fla. Sept. 12, 2024) (denying dismissal because the "net impression" created by the packaging of these same two products at issue here plausibly misleads reasonable consumers).

In the few responses where Sazerac has agreed to search for documents—but to date has not produced anything—it has unilaterally limited its search to "documents and communications ***concerning the labeling*** of Fireball Malt ***as sold in Florida***." (emphasis added). This unilateral limitation is not supported by any explanation or legal authority, and it is irreconcilable with this Court's Order finding that Plaintiff's claim challenges Sazerac's "practice of marketing Fireball Malt alongside Fireball Whisky ***using similar trade dress***[.]" [ECF No. 16 at 4-5.] (emphasis added).

## II. THE MOTION IS TIMELY AS SUPPORTED BY GOOD CAUSE

Local Rule 26.1(g)(2) requires a discovery dispute to be submitted within twenty-eight days of the response, extendable once by seven days, and provides that a later submission, "absent a showing of good cause, may, in the Court's discretion, constitute grounds for denial of the requested relief." S.D. Fla. L.R. 26.1(g)(2)(B). Good cause is present. The parties conferred by video conference on June 11, 2026; Plaintiff followed with a detailed, twelve-category deficiency letter on July 14, 2026, requesting Defendant's position on the disputed discovery items by July 20, 2026. The parties exchanged subsequent emails on July 20, 2026, but Defendant was unable to provide its response by that date. While the conferral remains ongoing, Sazerac to date has not agreed to produce the categories at issue. Courts in this District find good cause where any delay is "in part due to [the movant's] attempt to confer and resolve discovery matters . . . rather than having the Court unnecessarily intervene and issue a discovery order." *Wright v. GreenSky Mgmt. Co.*, No. 20-cv-62441-BLOOM/Valle, 2022 U.S. Dist. LEXIS 99761, at *11 (S.D. Fla. June 3, 2022); *PDV USA, Inc. v. Rivera*, No. 1:24-cv-20456-MD, 2024 U.S. Dist. LEXIS 124827, at *13 (S.D. Fla. May 6, 2024) ("Southern District of Florida Local Rule 26.1(g)(2)(B) permits the Court, in its discretion and absent a showing of good cause by the moving party, to deny a discovery motion as untimely. S.D. Fla. L.R. 26.1(g)(2)(B). However, the Court declines to deny the instant Motions on the basis that they are untimely and instead the Court will assess the Motions on their

merits."). Two further circumstances, of which the Court is already aware, confirm good cause and the absence of prejudice: undersigned counsel's serious family medical emergency during the intervening period, described in the pending motion to modify the schedule [ECF No. 25], and the fact that this is Plaintiff's first discovery motion, filed well before the September 29, 2026, discovery cutoff.

## III. LEGAL STANDARD

Rule 26(b)(1) permits discovery of any nonprivileged matter relevant to a claim or defense and proportional to the needs of the case. Once the requested discovery appears relevant, the objecting party bears the burden, and "must . . . show that the requested discovery has no possible bearing on the claims and defenses in this case." *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007); *accord Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (conclusory assertions of burden are insufficient; the resisting party must show specifically how each request is objectionable). Objections that a request is "vague, overly broad, or unduly burdensome" are, "by themselves, meaningless, and are deemed without merit." *Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 400 (S.D. Fla. 2008). And they also violate Section II.A. of this Court's discovery practices and procedures. And an evasive or incomplete answer "must be treated as a failure to . . . answer." Fed. R. Civ. P. 37(a)(4).

## IV. ARGUMENT

### A. The Sales, Pricing, and Cost Discovery Should Be Produced

The sales, pricing, cost, and profitability discovery (Interrogatories 4-7 and Requests 20-24 and 26-31) is relevant on the face of the pleadings and this Court's ruling. Because FDUTPA damages turn on the market-value difference the deceptive trade dress commanded, *Carriuolo*, 823 F.3d at 986-87, Plaintiff must calculate that price difference from Sazerac's real-world Florida sales, prices, and costs for both Fireball Malt and Fireball Whisky. Sazerac's flat relevance objection cannot be reconciled with its burden to show the data has "no possible bearing" on the case. *Milinazzo*, 247 F.R.D. at 695.

Sazerac's objection fails for the further reason that its own verified answers place this data in issue. Sazerac swore that it "line-prices" Fireball Malt to the spirits suggested retail price and "cannot establish a SRP for its malt products that undercuts" the whisky (Answer to Interrogatory 8); that "the pricing reference for Fireball Malt is the line-price SRP for all spirit products" (Answer to Interrogatory 12); and that "the cost of producing Fireball Malt is greater than the cost

of producing Fireball Whisky" (Answer to Interrogatory 7). Having made Fireball Whisky the pricing benchmark for Fireball Malt and put the products' relative costs in the record, Sazerac cannot invoke relevance to withhold the wholesale prices, cost of goods, margins, and brand-level financials that would test those sworn assertions (Interrogatories 5-7; Requests 23-24, 26-28, 30-31), or the Fireball Whisky comparator data its own methodology makes central.

Sazerac's narrow commitment — to provide, only after a protective order, "the total number of units sold for each bottle size" and gross revenue for Fireball Malt in Florida (Answers to Interrogatory 4 and Request 21) — does not answer the requests, which seek structured transactional data (monthly and annual unit sales, gross and net revenue, trade spend, and discounts, by SKU) for both products. Sazerac should be ordered to produce complete transactional actuals, in the electronic format requested, for Fireball Malt and Fireball Whisky.

Sazerac's "highly confidential" refrain is not a basis to withhold. "Under Rule 26(c)(7), there is no absolute privilege that immunizes trade secrets and similar confidential information from discovery"; the remedy is a protective order, and once relevance and need are shown "the trade secret should be disclosed." *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985). That remedy is already in hand: the parties are negotiating a protective order modeled on the one entered in the related *Puig* action, and Sazerac has conditioned much of its production on the order's entry, yet it has not provided Plaintiff with any response to the draft circulated on July 14, 2026. Confidentiality is therefore no ground to withhold once the order is entered — and no ground at all as to the many financial requests Sazerac refused outright irrespective of any order.

Nor does Sazerac's assertion that third-party "licensing agreements" bar production (Requests 22, 29-30) withhold what Plaintiff seeks. Syndicated sales and market-share data that Sazerac licenses and uses in its business are Sazerac's own business records, and a private confidentiality provision does not defeat production compelled by court order and protected by a protective order. *See Seegert v. Rexall Sundown, Inc.*, No. 17-cv-01243-JAH (JLB), 2019 U.S. Dist. LEXIS 135759, at *22 (S.D. Cal. Aug. 9, 2019) (denying Nielsen's motion for protective order; "the same documents and data have become Defendant's records"). At a minimum, Sazerac should produce the license provisions it says prohibit production, so the asserted bar can be evaluated; its own internal analyses, reports, and extracts that incorporate syndicated data (Requests 29-30), which no license reaches; and the identity of each data provider and subscription, so Plaintiff may subpoena the source directly — the very course Sazerac proposed.

**B. The Parallel-Litigation and Regulatory Materials Should Be Produced**

Request 33 seeks the document productions, deposition transcripts, expert reports, and discovery responses from six specifically identified actions against Sazerac concerning these same two products and this same nationally uniform trade dress — *Puig*, *McKay*, *Myers*, *Pizarro*, *Andrews*, and the Puerto Rico *PAN AM* proceeding pled in the Complaint. That is not the "cloned" or "piggyback" discovery Sazerac's authorities condemn. Discovery of materials from other litigation is proper — indeed "the widely-accepted view" — where the other actions involve "the same or similar claims arising from . . . the same or similar products." *United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 410-11 (D. Md. 2005). Sazerac's own case confirms the point: the request in *Bhatia* was overbroad because it sought "all documents produced by Defendants in an unlimited number of cases involving other parties and other issues," but the court recognized that discovery is allowed "when the previous litigation . . . and the present case 'have significant factual and legal overlap' and involve the same legal claims." *Bhatia v. Silvergate Bank*, No. 23CV1406-RBM(BLM), 2024 WL 3929887, at *4 & n.5 (S.D. Cal. Aug. 23, 2024). Six identified actions against the same defendant over the same products present exactly that overlap, and Plaintiff has already narrowed Request 33 to four defined categories. Request 34 is likewise category-specific, and Sazerac's answer — offering only Florida labels — does not respond to a request for materials concerning consumer confusion between these products that were marketed uniformaly nationwide, and addressed in other proceedings.

The regulatory requests are equally relevant. Sazerac's principal defense is FDUTPA's safe harbor, which it grounds entirely in the federal Certificates of Label Approval the Tax and Trade Bureau issued for Fireball Malt. [ECF No. 16 at 2-3.] Documents "relevant to any party's . . . defense" are discoverable, Fed. R. Civ. P. 26(b)(1), and the complete Bureau record — the applications, submissions, approvals, denials, amendments, and correspondence Plaintiff requested (Request 32) — bears directly on whether that safe harbor applies and on Sazerac's knowledge of the confusion its packaging creates. The Bureau may not issue a Certificate if the label "directly creates a misleading impression," 27 C.F.R. § 7.122(b)(1), so what Sazerac told, and withheld from, the Bureau is squarely at issue. Its offer of only the Florida Certificates and "correspondence regarding the same" withholds the rest without justification. Interrogatory 15 and Request 34 likewise reach Sazerac's other regulatory and consumer-confusion proceedings —

matters Sazerac's verified answer partially identified but left incomplete, omitting the *Andrews* and *PAN AM* matters it acknowledged elsewhere.

**C. The Products Themselves Should Be Made Available for Inspection**

Federal Rule of Civil Procedure 34(a)(1)(B) entitles a party to inspect, test, sample, and photograph tangible things in the responding party's possession or control. Plaintiff's claim is about what a consumer encounters at the shelf — the bottle, cap, liquid color, label, and carton in three dimensions — and, as shown above, the products themselves are the primary evidence of the deception a jury must weigh. Sazerac's response to Request 43 offers only two-dimensional label images and Certificates of Label Approval in place of the products; that is not a response to a request to inspect the products. The need is most acute for the discontinued Class-Period label versions and package configurations that can no longer be purchased at retail and exist only in Sazerac's archives. Any shipping burden is readily solved by making exemplars available for inspection and photography at defense counsel's Florida co-counsel's office or a Florida distributor facility. Sazerac should be ordered to produce for inspection, under Rule 34(a)(1)(B), a sealed, commercially representative exemplar of each Fireball Malt SKU, bottle size, and package configuration sold during the Class Period, together with the comparator Fireball Whisky configurations.

**D. Sazerac May Not Unilaterally Narrow the Development, Marketing, and Channel Requests**

Requests 3 through 6 seek the development, business-case, executive-approval, competitive-analysis, and design record for Fireball Malt — the documents showing how, and why, the two products' appearance converged — and Requests 14 through 17 seek the channel-strategy, planogram, cold-vault-placement, sales-training, and distributor and retailer communications that show where and how Fireball Malt is presented at retail, which is the mechanism of the alleged deception. In response, Sazerac committed only to search for "documents and communications concerning the labeling of Fireball Malt as sold in Florida," and refused the channel requests outright. That answers a request Plaintiff did not make. This Court held that Plaintiff's claim challenges Sazerac's "practice of marketing Fireball Malt alongside Fireball Whisky using similar trade dress" — a nationwide marketing and trade dress practice, not a Florida labeling question. [ECF No. 16 at 4-5.] A responding party may not unilaterally narrow a request to a scope of its own choosing; it must produce within the undisputed scope and state

with specificity what it is withholding and why. Fed. R. Civ. P. 34(b)(2)(B)-(C); *see Guzman*, 249 F.R.D. at 400.

The relevance of these materials is not speculative. Sazerac's own record in the related *PAN AM* proceeding, attached to the Complaint, reflects its acknowledgment that malt products were identified as a threat to the Fireball Whisky line and that its strategy was not to differentiate the two products. *See* Compl. ¶ 53. The development, marketing, and channel documents memorializing that strategy — nationwide, and not merely "as sold in Florida" — go to the core of the case, and Sazerac's boilerplate objections and self-imposed geographic limitation are no basis to withhold them.

## V. CONCLUSION

Sazerac's boilerplate refusals are not substantially justified. Plaintiff respectfully requests that the Court grant this Motion; order Sazerac, within fourteen days, to serve amended answers to Interrogatories 4-7 and 15 and to produce documents responsive to Requests 20-24 and 26-34, as set forth in Exhibit A, subject to entry of the parties' protective order; and grant such other and further relief as the Court deems just and proper.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b), Plaintiff respectfully requests a hearing on this Motion. Plaintiff respectfully submits that a hearing could be helpful to the Court in understanding and efficiently resolving the discovery disputes described herein. Plaintiff estimates that no more than 30 minutes would be required for argument.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules 7.1(a)(3) and 26.1(g), undersigned counsel certifies that counsel for Plaintiff conferred in good faith with counsel for Defendant in a genuine effort to resolve the issues raised in this Motion, including by video conference on June 11, 2026, and by written correspondence, thereafter, including Plaintiff's July 14, 2026, deficiency letter and subsequent email exchanges on July 20, 2026. Despite those efforts, the parties have been unable to resolve the disputes presented by this Motion, as Defendant has not agreed to produce the categories of discovery at issue. Plaintiff remains willing to continue conferring and to narrow the requests where possible without prejudicing Plaintiff's ability to fully and fairly present his case to a jury.

Dated: July 21, 2026

Respectfully submitted,

*/s/ Christopher Gold*
Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, P.A.**
350 Lincoln Road, 2nd Floor
Miami Beach, FL 33139
Telephone: (305) 900-4653
Email: chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the date set forth above, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will serve a copy upon all counsel of record.

*/s/ Christopher Gold*
Christopher Gold, Esq.

*Hernandez v. Sazerac Company, Inc.*
Case No. 1:25-cv-24568-PCH/LFL (S.D. Fla.)

# EXHIBIT A

Defendant Sazerac Company, Inc.'s Answers to Plaintiff's First Interrogatories and Responses to Plaintiff's First Requests for Production of Documents

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| RAFAEL HERNANDEZ, individually and on behalf of all others similarly situated, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 1:25-cv-24568-PCH |
| | : | CLASS ACTION |
| SAZERAC COMPANY, INC., | : | |
| Defendant. | : | |

**DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Sazerac Company, Inc. ("Sazerac") hereby responds to plaintiff Rafael Hernandez's First Set of Interrogatories served in the above-captioned action.

**GENERAL OBJECTIONS**

1. Sazerac objects to the Interrogatories, including the Definitions and Instructions, to the extent that they seek to impose obligations on Sazerac greater than or in addition to those imposed by the Federal Rules of Civil Procedure or the Local Rules of the Southern District of Florida. This general objection is incorporated by reference into every individual answer set forth below, even if not specifically set forth therein.

2. Sazerac objects to the Interrogatories to the extent that they seek information protected from discovery by the attorney-client privilege, the work product doctrine, or any other available privilege.

3. Sazerac objects to the Interrogatories to the extent that they seek privileged information or documents created by or at the request of counsel, or communications between Sazerac and its in-house and/or outside counsel pertaining to this matter after commencement of

this lawsuit.

4. Sazerac objects to the Interrogatories to the extent that they seek information that is confidential, proprietary, commercially sensitive or competitively significant, or personal information relating to Defendant, its affiliates, employees and/or clients, customers or counterparties, or information that is subject to other protective orders, non-disclosure agreements or other confidentiality undertakings.

## **SAZERAC'S SPECIFIC OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 1:** Identify each Person (whether employed by You or not) who provided information about any of these Interrogatories or Document Requests propounded by Plaintiff and specify the Interrogatories or Document Requests about which each such Person provided information and the information they provided.

**RESPONSE:** Sazerac objects to this Interrogatory on the grounds that it seeks information protected from discovery by the attorney-client privilege and the work-product doctrine. Notwithstanding the objection, and without waiving it, Sazerac states that counsel relied upon information gleaned from interviews with multiple employees and a review of documents.

**INTERROGATORY NO. 2:** Identify all Persons (including current and former employees, officers, directors, consultants, contractors, and agents, and Third-Parties) who participated in or had approval authority over the creation, design, planning, development, approval, branding, marketing, or launch of Fireball Malt including, without limitation, (a) the decision to create, manufacture, and sell Fireball Malt; (b) market research and competitor analysis for Fireball Malt; (c) the design and approval of the Fireball Malt label, bottle, cap, carton, or other Packaging; (d) the selection or approval of retail channels for Fireball Malt; and (e) the marketing, advertising, or promotion of Fireball Malt, and describe the nature of the work performed by each.

**RESPONSE:** Sazerac objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. Sazerac also objects to this Interrogatory as

consisting of multiple interrogatories. Notwithstanding the objections, and without waiving them, Sazerac identifies Mark Brown, Executive Chairman, and Jake Wenz, President and CEO, as the persons responsible for the decision to manufacture and sell Fireball Malt and the selection of distribution channels for Fireball Malt. Sazerac further states that because it sells to distributors and not to retailers, it had no role in "selection or approval of retail channels for Fireball Malt."

**INTERROGATORY NO. 3:** Identify each distributor, wholesaler, and Retailer chain and location to which You or any Third Party acting on Your behalf sold, shipped, or delivered Fireball Malt in or to the State of Florida during the Class Period.

**RESPONSE:** Sazerac objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. Sazerac further objects to this Interrogatory on the grounds that it seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**INTERROGATORY NO. 4:** Identify the "SKU", bottle size, and Packaging variation of Fireball Malt sold in the State of Florida during the Class Period, including the dates each was introduced and (if applicable) discontinued, and for each, state the total unit volume sold, gross revenue, trade spend or discounts applied, and net revenue, broken out by month and calendar year.

**RESPONSE:** Sazerac objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. Sazerac further objects to this Interrogatory on the grounds that it seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac states that, upon entry of a suitable protective order, it will provide information regarding the total number of units sold for each bottle size of Fireball Malt sold in Florida and the gross revenue for each bottle size of Fireball Malt sold in Florida.

**<u>INTERROGATORY NO. 5</u>:** For each month of the Class Period, state Your Cost of Goods Sold on a per-unit basis for each Fireball Malt SKU and each Fireball Whisky SKU.

**<u>RESPONSE</u>:** Sazerac objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. Sazerac further objects to this Interrogatory on the grounds that it seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**<u>INTERROGATORY NO. 6</u>:** For each month of the Class Period, state Your average Wholesale Price (net of rebates, allowances, and discounts) on a per-unit basis for each Fireball Malt SKU and each Fireball Whisky SKU.

**<u>RESPONSE</u>:** Sazerac objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. Sazerac further objects to this Interrogatory on the grounds that it seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**<u>INTERROGATORY NO. 7</u>:** Identify and quantify each component of Your per-unit manufacturing cost for a 50 mL Fireball Malt and a 50 mL Fireball Whisky, including: (a) the alcohol base; (b) flavoring, coloring, and sweeteners; (c) packaging (bottle, closure, label); (d) direct labor; and (e) allocated overhead.

**<u>RESPONSE</u>:** Sazerac objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. Sazerac further objects to this Interrogatory on the grounds that it seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac states that the cost of producing Fireball Malt is greater than the cost of producing Fireball Whisky.

**<u>INTERROGATORY NO. 8</u>:** Describe Your methodology for setting the Wholesale Price and MSRP of Fireball Malt, including the role (if any) played by the price of Fireball Whisky, and identify the persons most knowledgeable about that methodology.

**<u>RESPONSE</u>:** Sazerac objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. Sazerac further objects to this Interrogatory on the grounds that it seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac states that it line-prices the products sold in a malt version as well as in a spirits version, so that the SRP for each size of its spirits products is also the SRP for the equivalent size of its malt products. Sazerac further states that to preserve its relationships with its spirits distributors, Sazerac cannot establish a SRP for its malt products that undercuts the SRP for its spirits products.

**<u>INTERROGATORY NO. 9</u>:** Identify each instance during the Class Period in which You changed the Wholesale Price or MSRP of any Fireball Malt SKU or any Fireball Whisky SKU, stating the date, the SKU, the prior price, the new price, and the reason for the change.

**<u>RESPONSE</u>:** Sazerac objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. Sazerac further objects to this Interrogatory on the grounds that it seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac states that it has not changed its SRPs for Fireball Whisky or Fireball Malt during the relevant time period.

**<u>INTERROGATORY NO. 10</u>:** Identify each instance during the Class Period in which You changed any component of the packaging of any Fireball Malt SKU or any Fireball Whisky SKU, stating the date, the SKU, the change made, and the reason for the change.

**RESPONSE:** Sazerac objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. For example, the Interrogatory, as written, would require Sazerac to identify every non-bottle packaging change made for holiday or special promotions and also would require identification of differences among labels and packaging in states other than Florida. Notwithstanding the objections, and without waiving them, Sazerac will, pursuant to Fed. R. Civ. P. 33(d), produce images of Fireball Malt labels as sold in Florida as well as the associated COLAs.

**INTERROGATORY NO. 11:** Identify each ingredient used in Fireball Malt and Fireball Whisky during the Class Period and identify any variations in the ingredient composition for those products during the Class Period and the dates on which such variations were implemented or were in effect.

**RESPONSE:** Sazerac objects to this Interrogatory on the grounds that it seeks highly confidential and proprietary information. Sazerac further objects to this Interrogatory on the grounds that it is not relevant to any claim or defense in this case.

**INTERROGATORY NO. 12:** Identify each product (whether manufactured by You or by any third party) that You have internally treated as a competitor, benchmark, comparable, or pricing reference for Fireball Malt, and for each, state the basis on which You so treated it.

**RESPONSE:** Sazerac objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. Sazerac further objects to this Interrogatory on the grounds that it seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac states that the pricing reference for Fireball Malt is the line-price SRP for all spirit products sold in a malt version.

**INTERROGATORY NO. 13:** Identify all consumer surveys, focus groups, shop-alongs, eye-tracking studies, shelf-set tests, purchase-path studies, brand tracking studies, brand-

equity studies, and other market research that You commissioned, funded, participated in, received, reviewed, or are otherwise aware of that relate to consumer perception, recognition, comprehension, confusion, or differentiation between Fireball Malt and Fireball Whisky.

**RESPONSE:** Sazerac objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in this matter and seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac states that it has conducted no such surveys or studies.

**INTERROGATORY NO. 14:** Identify every SWOT analysis, competitive analysis, brand-portfolio analysis, or cannibalization study prepared by or for You that references or analyzes Fireball Malt, including the author, the recipient, and the purpose of each.

**RESPONSE:** Sazerac objects to this Interrogatory on the grounds that it seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Sazerac also objects to this Interrogatory to the extent that it seeks information protected from discovery by the work product doctrine. Notwithstanding the objections, and without waiving them, Sazerac states that Numerator has prepared slides based on its consumer database showing differences in purchasing behavior between purchasers of Fireball Malt and purchasers of Fireball Whisky.

**INTERROGATORY NO. 15:** Identify each litigation matter, administrative proceeding, National Advertising Division ("NAD") challenge, Better Business Bureau ("BBB") complaint, state Attorney General inquiry, Federal Trade Commission inquiry, trademark opposition, or regulatory investigation concerning Fireball Malt or concerning consumer confusion between Fireball Malt and Fireball Whisky.

**RESPONSE:** The following lawsuits have addressed Fireball Malt:

*Marquez v. Sazerac Company, Inc.*, Case No. 1:23-cv-00097 (N.D. Ill.);

*Myers v. Sazerac Company, Inc.*, Case No. 3:23-cv-00522-EMC (N.D. Cal.);

*Pizarro v. Sazerac Company, Inc.*, Case No. 7:23-cv-02751-KMK (S.D.N.Y.); and

*Puig v. Sazerac Company, Inc.*, Case No. 2:23-cv-00856-JES-NPM (M.D. Fla.).

**INTERROGATORY NO. 16:** Identify all data sources, electronic systems, and communication channels used by Your employees, officers, and agents since January 1, 2020, in connection with the development, labeling, packaging, marketing, advertising, sale, or distribution of Fireball Malt, including email systems, instant-messaging and collaboration platforms (e.g., Teams, Slack), shared drives, SharePoint, OneDrive, text messages, ephemeral-messaging applications, and any bring-your-own-device or personal-email practices.

**RESPONSE:** To the extent that the Interrogatory includes "agents," Sazerac objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. Notwithstanding the objections, and without waiving them, Sazerac states that its officers and employees use email.

**INTERROGATORY NO. 17:** State all facts supporting any affirmative defense You intend to assert in this action, and Identify all Documents, Communications, and Persons supporting each such defense.

**ANSWER:** Sazerac objects to this Interrogatory on the grounds that it seeks information protected from discovery by the work product doctrine, impermissibly seeks to have Sazerac marshal all facts in support of its defenses, is premature, is overly broad and unduly burdensome, and is not proportionate to the needs of the case. Notwithstanding the objection, and without waiving it, Sazerac states that it will provide its exhibit list at the time directed by the court.

Dated: June 4, 2026

Respectfully submitted,

JONES FOSTER P.A.

*/s/ Joanne M. O'Connor*
Joanne M. O'Connor
Florida Bar No: 498807
505 South Flagler Drive, Suite 1100
West Palm Beach, FL 33401
(561) 659-3000
joconnor@jonesfoster.com

Creighton R. Magid (application *pro hac vice* forthcoming)
Katherine E. Canning (application *pro hac vice* forthcoming)
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W. Suite 900
Washington, D.C. 20005
(202) 442-3555
magid.chip@dorsey.com
canning.katherine@dorsey.com

*Attorneys for Defendant Sazerac Company, Inc.*

## VERIFICATION

I declare under penalty of perjury that I am the Chief Legal Officer and General Counsel of Sazerac Company, Inc.; that I have reviewed the foregoing Answers to Plaintiff's First Interrogatories; that I do not have personal knowledge or information concerning all of the information set forth in the foregoing answers, but am informed and believe that the information is true and correct and reflects the information currently available to Sazerac Company, Inc.; and that I have relied on outside legal counsel for the objections set forth herein, for the form of the responses to the Interrogatories, and for the application of law to fact.

Dated: June 4, 2026

Signed by:

0F65391F27FB4BB...

Maurice Loebl
Sazerac Company, Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| RAFAEL HERNANDEZ, individually and on behalf of all others similarly situated, | : | |
| Plaintiff, | : | Case No. 1:25-cv-24568-PCH |
| v. | : | CLASS ACTION |
| SAZERAC COMPANY, INC., | : | |
| Defendant. | : | |

**DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Sazerac Company, Inc. ("Sazerac") hereby answers the First Set of Requests for Production of Documents served by Plaintiff Rafael Hernandez ("Plaintiff") in the above-captioned action.

**GENERAL OBJECTIONS**

1. Sazerac objects to the Definitions and Instructions to the extent that they seek to impose obligations on Sazerac greater than or in addition to those imposed by the Federal Rules of Civil Procedure.

2. Sazerac objects to the Requests to the extent that they seek privileged information protected from discovery by the attorney-client privilege, the work product doctrine, or any other available privilege.

3. Sazerac objects to the Requests to the extent that they seek privileged information or documents created by or at the request of counsel, or communications between Sazerac and its in-house and/or outside counsel pertaining to this matter after commencement of this lawsuit.

4. Sazerac objects to the Requests to the extent that they seek information that is confidential, proprietary, commercially sensitive or competitively significant, or personal information relating to Defendant, its affiliates, employees and/or clients, customers or counterparties, or information that is subject to other protective orders, non-disclosure agreements or other confidentiality undertakings.

**SPECIFIC OBJECTIONS AND RESPONSES**

**REQUEST NO. 1:** All non-privileged Documents and ESI referred to, consulted, or relied upon in the preparation of Defendant's answers and responses to Plaintiff's Interrogatories and /or Requests for Production.

**RESPONSE**: Sazerac objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of the case. Sazerac further objects that this Request seeks documents protected by the attorney work product doctrine.

**REQUEST NO. 2:** All Documents and communications supporting or contradicting any affirmative defense You intend to assert in this action.

**RESPONSE**: Sazerac objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of the case. Additionally, Sazerac objects to the Request on the grounds that it impermissibly seeks to have Sazerac marshal all evidence related to the affirmative defenses. Sazerac further objects that this Request seeks documents protected by the attorney work product doctrine.

**REQUEST NO. 3:** All Documents and communications concerning the creation, design, planning, development, approval, branding, marketing, or launch of Fireball Malt, including project charters, project codenames, launch proposals, business-case analyses, executive approvals, board presentations, executive steering-committee materials, C-suite communications, and post-launch performance reviews.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly

confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac will conduct a reasonable search for documents and communications concerning the labeling of Fireball Malt generally, as well as documents specific to the labels of Fireball Malt as sold in Florida, and, subject to entry of a suitable protective order, will produce all such documents that are not subject to a privilege.

**REQUEST NO. 4:** All SWOT analyses, competitive analyses, market-gap studies, white-space analyses, brand-portfolio analyses, brand-architecture analyses, and cannibalization studies prepared by or for You that reference or analyze Fireball Malt.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac will conduct a reasonable search for documents and communications concerning the labeling of Fireball Malt generally, as well as documents specific to the labels of Fireball Malt as sold in Florida, and, subject to entry of a suitable protective order, will produce all such documents that are not subject to a privilege.

**REQUEST NO. 5:** All Documents concerning the strategic rationale for developing Fireball Malt as a malt beverage, including any analysis of selling Fireball-branded products through retail channels that cannot lawfully sell distilled spirits (*e.g.*, convenience stores, gas stations, and grocery stores in certain jurisdictions).

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's

business. Notwithstanding the objections, and without waiving them, Sazerac will conduct a reasonable search for documents and communications concerning the labeling of Fireball Malt generally, as well as documents specific to the labels of Fireball Malt as sold in Florida, and, subject to entry of a suitable protective order, will produce all such documents that are not subject to a privilege.

**REQUEST NO. 6:** Documents showing all iterations of the Packaging, label, bottle, cap, carton, case, and Trade Dress of Fireball Malt and Fireball Whisky during the Class Period, including design files (*e.g.*, Adobe InDesign, Illustrator, or Photoshop files), artwork approval chains, version histories, mock-ups, comps, and rejected alternative designs.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac will produce images of the labels as they appeared on Fireball Malt sold in Florida during the relevant time period.

**REQUEST NO. 7:** All side-by-side comparisons, comparative mock-ups, visual audits, or other Documents internally comparing the appearance of Fireball Malt to Fireball Whisky, and all internal communications regarding same.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac will produce such non-privileged documents comparing the packaging of Fireball Malt and Fireball Whisky as may be located by means of a reasonable search, and will produce responsive, non-privileged documents subject to entry of a mutually agreeable protective order.

**REQUEST NO. 8:** All Documents reflecting brand guidelines, style guides, color specifications, typography specifications, or design standards applicable to Fireball Malt and Documents that reflect the same for Fireball Whisky.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**REQUEST NO. 9:** All Documents reflecting internal debate, objection, or concern — whether from any regulatory, legal, brand, marketing, creative, sales, or other function — regarding (a) the similarity between Fireball Malt and Fireball Whisky, (b) the adequacy of differentiation between the two products, or (c) the risk of consumer confusion between them.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, and subject to entry of a suitable protective order, Sazerac will produce such non-privileged documents as may be located by means of a reasonable search.

**REQUEST NO. 10:** All marketing plans, media plans, creative briefs, messaging architectures, brand-positioning statements, and annual marketing-strategy documents for Fireball Malt during the Class Period.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, and with the understanding that the Request pertains to commercial campaigns (as opposed to, for

example, plans for special packaging such as candy cane 10-packs for the Christmas holiday), Sazerac states that no responsive documents exist.

**REQUEST NO. 11:** All Communications between You and any advertising agency, marketing agency, public relations firm, digital agency, media agency, or promotional agency concerning Fireball Malt, including retainer agreements, scopes of work, and approval correspondence.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac states that no responsive documents exist.

**REQUEST NO. 12:** All Documents concerning Your target consumer for Fireball Malt, including consumer profiles, personas, psychographic and demographic research, segmentation studies, and occasion-based or need-state analyses.

**RESPONSE:** Sazerac does not have a "target consumer" for Fireball Malt. Therefore, no responsive documents exist. However, subject to entry of a suitable protective order, Sazerac will produce such documents identifying demographic differences and differences in purchasing behavior between Fireball Malt purchasers and Fireball Whisky purchasers as may be located by means of a reasonable search.

**REQUEST NO. 13:** All social-media content, influencer-program materials, user-generated-content campaigns, paid-social advertising, paid-search advertising, programmatic advertising, connected-TV advertising, and out-of-home advertising for Fireball Malt, together with associated targeting criteria, audience specifications, creative assets, and agency Communications.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be

damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac states that no responsive documents exist.

**REQUEST NO. 14:** All channel-strategy Documents for Fireball Malt, including materials specific to convenience stores, gas stations, grocery stores, mass retailers, drug stores, club stores, and any other off-premise channels.

**RESPONSE:** Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**REQUEST NO. 15:** All planograms, shelf-placement recommendations, cold-vault-placement materials, category-management presentations, and merchandising materials provided by You or any Third Party on Your behalf to any Distributor or Retailer (including in the State of Florida) concerning Fireball Malt.

**RESPONSE:** Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**REQUEST NO. 16:** All sales-training materials, brand-ambassador materials, talking-point documents, FAQs, and educational materials provided to Your employees, to Distributors, or to Retailers concerning how to sell, describe, or promote Fireball Malt.

**RESPONSE:** Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**REQUEST NO. 17:** All Communications with Distributors, Retailers, or retail chains (including in the State of Florida) concerning placement, merchandising, co-location, or shelf adjacency of Fireball Malt, and all Communications concerning consumer or employee confusion between Fireball Malt and Fireball Whisky.

**RESPONSE:** Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections to this Request, and without waiving them, Sazerac will produce, subject to entry of a suitable protective order, all documents between Sazerac and distributors concerning consumer confusion between Fireball Malt and Fireball Whisky that are identified by means of a reasonable search.

**REQUEST NO. 18:** All Documents concerning consumer complaints, inquiries, reviews, or feedback regarding Fireball Malt or consumer confusion between Fireball Malt and Fireball Whisky, including customer-service logs, CRM records, call-center records, ticketing-system exports, email correspondence, social-media complaints, complaint-response templates, and any internal Communications regarding the same, produced in native format with all Metadata intact.

**RESPONSE**: Sazerac objects to the Request on the grounds that it seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objection to this Request, and without waiving it, Sazerac will produce, subject to entry of a suitable protective order, customer services records of complaints regarding Fireball Malt.

**REQUEST NO. 19:** All consumer surveys, focus groups, shop-alongs, eye-tracking studies, shelf-set tests, purchase-path studies, brand tracking studies, brand-equity studies, and other market research relating in whole or in part to consumer perception, recognition, comprehension, confusion, or differentiation between Fireball Malt and Fireball Whisky, including all underlying data, questionnaires, screeners, stimuli, vendor Communications, transcripts, recordings, and reports.

**RESPONSE**: Sazerac objects to the Request on the grounds that it seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objection to this Request, and without waiving it, Sazerac will produce, subject to entry of a suitable protective order, such responsive documents that are identified by means of a reasonable search.

**REQUEST NO. 20:** All Documents concerning returns, exchanges, chargebacks, or refunds of Fireball Malt, and Communications with consumers, Retailers, or Distributors concerning the same.

**RESPONSE:** Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**REQUEST NO. 21:** All accounting records, profit-and-loss statements, sales journals, general ledgers, and similar records showing transaction-level sales data for Fireball Malt and Fireball Whisky in the state of Florida during the Class Period, produced in a structured electronic format (such as .csv), reflecting monthly unit sales, gross revenue, and net revenue for each Fireball Malt SKU and each Fireball Whisky SKU sold in Florida during the Class Period, and containing at minimum the following fields: SKU identifier; product description; ship-from location; ship-to state; ship-to Distributor or Retailer; shipment date; unit volume; case equivalent; gross wholesale price; invoiced amount; trade promotion, rebate, or discount amount; and net revenue.

**RESPONSE:** Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac states that, upon entry of a suitable protective order, it will provide documentation of the total number of units sold

for each bottle size of Fireball Malt sold in Florida and the gross revenue for each bottle size of Fireball Malt sold in Florida.

**REQUEST NO. 22:** Sales data for Fireball Malt during the Class Period from AC Nielsen, IRI, or any third-party party source, related to the Product.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Sazerac further objects on the grounds that it is precluded from providing such third-party sales information pursuant to the terms of licensing agreements with the information providers.

**REQUEST NO. 23:** All Documents reflecting wholesale pricing, MSRP, price-list archives, trade-promotion programs, rebate programs, and discounting programs for Fireball Malt and Fireball Whisky in the state of Florida during the Class Period.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**REQUEST NO. 24:** All Documents reflecting cost of goods sold, gross margin, contribution margin, operating margin, and profitability for Fireball Malt and Fireball Whisky during the Class Period, by month, SKU, and by brand. All cost-accounting records, standard-cost cards, manufacturing cost worksheets, bills of material, formulation sheets, and variance analyses reflecting Your per-unit Cost of Goods Sold for each Fireball Malt SKU and each Fireball Whisky SKU during each month of the Class Period.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly

confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**REQUEST NO. 25:** All Documents concerning price-elasticity studies, pricing research, demand modeling, willingness-to-pay studies, or analyses of the price premium associated with the Fireball brand or with the designation of a product as "whisky."

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Notwithstanding the objections, and without waiving them, Sazerac states that no responsive documents exist.

**REQUEST NO. 26:** All bills of material, formulation specifications, recipe sheets, packaging specifications, and component-cost worksheets for the 50 mL Fireball Malt and the 50 mL Fireball Whisky.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**REQUEST NO. 27:** All internal pricing memoranda, pricing-committee minutes, pricing strategy decks, marketing-finance pricing analyses, and similar Documents concerning the setting, modification, or benchmarking of the Wholesale Price or MSRP of Fireball Malt during the Class Period.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's

business. Notwithstanding the objections, and without waiving them, Sazerac states that no responsive documents exist.

**REQUEST NO. 28:** All annual or year-end financial reports, brand P&Ls, contribution-margin analyses, and product-line profitability reports for Fireball Malt and Fireball Whisky during the Class Period.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**REQUEST NO. 29:** All competitive analyses, market-share reports, share-of-shelf studies, Nielsen/NielsenIQ data extracts, IRI/Circana data extracts, and similar internal or third-party reports identifying products that You treat as comparable, competitive, or benchmark products for Fireball Malt during the Class Period.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business. Additionally, Sazerac objects on the grounds that it is precluded from providing such third-party sales information pursuant to the terms of licensing agreements with the information providers.

**REQUEST NO. 30:** All Documents reflecting benchmarking of Fireball Malt pricing against Fireball Whisky, against any other Sazerac product, or against any competitor product, including internal analyses, consultant reports, and external pricing studies.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Additionally, Sazerac objects that the Request is vague and

ambiguous as to the meaning of "benchmarking." Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business, and, to the extent that the Request seeks confidential information provided to Sazarac by third parties, on the grounds that Sazerac is prohibited from producing such information by the terms of its licenses with the providers.

**REQUEST NO. 31:** All Documents reflecting analysis, measurement, or commentary on the price premium associated with the Fireball Whisky brand, including brand-equity valuations, licensing valuations, willingness-to-pay studies, and any internal estimate of the portion of Fireball Whisky's price attributable to brand value versus input costs.

**RESPONSE:** Sazerac objects to this Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in this matter. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging to Sazerac's business.

**REQUEST NO. 32:** All Documents and Communications between You and the TTB concerning Fireball Malt, including all COLA applications, submissions, approvals, denials, amendments, and correspondence.

**RESPONSE**: Sazerac objects to the Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case in that it seeks information about labels for Fireball Malt products not sold in Florida. Notwithstanding Sazerac's objections to this Request, and without waiving them, Sazerac will produce copies of the COLAs for Fireball Malt as sold in Florida and any correspondence with the TTB regarding the same.

**REQUEST NO. 33:** All document productions, deposition transcripts and exhibits, declarations, expert reports, expert disclosures, and written discovery responses served, produced, or received by You in the following actions: *Puig v. Sazerac Co*., No. 2:23-cv-856 (M.D. Fla.); *McKay v. Sazerac Co., Inc.*, No. 23-cv-00522 (N.D. Cal.); *Myers v. Sazerac Co., Inc*., No. 3:23-cv-522 (N.D. Cal.); *Pizzaro v. Sazerac Co*., No. 23-cv-2751 (S.D.N.Y.); *Andrews v. Sazerac Co*.,

No. 23-cv-1060 (S.D.N.Y.); and *PAN AM Props., Corp. v. Sazerac Co., Inc.*, KLCE202500119 (P.R.).

**<u>RESPONSE</u>:** Sazerac objects to this Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case, as the requested documentation pertains to labels on products sold in states other than Florida. Sazerac further objects on the grounds that such catch-all requests for documents from other litigation matters are improper. *See, e.g., Bhatia v. Silvergate Bank*, 2024 U.S. Dist. LEXIS 151934, *13-14 (S.D. Cal. Aug. 23, 2024) ("Even if each and every document produced in the previous litigation is relevant to Plaintiffs' claims, Plaintiffs must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses.") (citations and quotations omitted); *Atico Int'l USA, Inc. v. Luv N Care, Ltd.*, 2010 U.S. Dist. LEXIS 153655, *9-11 (S.D. Fla. July 21, 2010) (requests for documents produced in other litigation matters are overly broad, unduly burdensome, seek irrelevant information, and constitute an impermissible fishing expedition).

**<u>REQUEST NO. 34</u>:** All Documents concerning any other litigation, administrative proceeding, regulatory inquiry, NAD challenge, BBB complaint, state Attorney General inquiry, FTC inquiry, trademark opposition, or competitor cease-and-desist correspondence concerning Fireball Malt or concerning consumer confusion between Fireball Malt and Fireball Whisky.

**<u>RESPONSE</u>:** Sazerac objects to this Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information that is not relevant to any claim or defense in the case. Sazerac further objects on the grounds that such catch-all requests for documents from other litigation matters are improper. *See, e.g., Bhatia v. Silvergate Bank*, 2024 U.S. Dist. LEXIS 151934, *13-14 (S.D. Cal. Aug. 23, 2024) ("Even if each and every document produced in the previous litigation is relevant to Plaintiffs' claims, Plaintiffs must make proper discovery requests, identifying the specific categories of documents sought, in order to

obtain them—and each category must be relevant to its claims and defenses.") (citations and quotations omitted); *Atico Int'l USA, Inc. v. Luv N Care, Ltd.*, 2010 U.S. Dist. LEXIS 153655, *9-11 (S.D. Fla. July 21, 2010) (requests for documents produced in other litigation matters are overly broad, unduly burdensome, seek irrelevant information, and constitute an impermissible fishing expedition). Notwithstanding the objections, and without waiving them, azerac will produce copies of the COLAs for Fireball Malt as sold in Florida and any correspondence with the TTB regarding the same.

**REQUEST NO. 35:** An organizational chart, or Documents sufficient to identify, Your managerial, directorial, brand-team, marketing, sales, legal, and regulatory structure that had any involvement in the creation, development, launch, marketing, promotion, and sale of Fireball Malt.

**RESPONSE:** Sazerac objects to this Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, and seeks information not relevant to any claim or defense in the action.

**REQUEST NO. 36:** All insurance policies that may provide coverage for a judgment entered against You in this action, including general liability, advertising injury, products liability, excess, and umbrella policies, together with reservation-of-rights letters, tender correspondence, and Communications with any insurer concerning this action.

**RESPONSE:** No responsive documents exist.

**REQUEST NO. 37:** All indemnification, hold-harmless, co-packer, bottling, contract-manufacturing, and licensing agreements under which any Third Party may be responsible for all or part of a judgment that may be entered against You in this action, and all Communications with those Third Parties concerning such agreements.

**RESPONSE:** No responsive documents exist.

**REQUEST NO. 38:** A plain-English description or glossary of any and all lists, legends, codes, abbreviations, employee initials, internal project names, or other non-obvious terms, words, or data appearing in any of the Documents or ESI produced.

**RESPONSE:** Sazerac objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of the case, particularly to the extent asks Sazerac

to create a document not currently in existence. Sazerac further objects that this Request is actually an Interrogatory, not a Request for Production.

**REQUEST NO. 39:** All Documents identified in Your Rule 26(a)(1) initial disclosures.

**RESPONSE:** Sazerac will produce non-privileged responsive documents subject to entry of a mutually agreeable protective order.

**REQUEST NO. 40:** All Documents produced or received by You in response to any subpoena, civil investigative demand, or other compulsory request for information in this action.

**RESPONSE:** Sazerac objects to this Request on the grounds that it is unduly vague and ambiguous to the extent it references civil investigative demands or other compulsory requests, as it is not clear how such requests might come about in the present action. Notwithstanding these objections, and without waiving them, Sazerac will produce documents it receives in response to any third-party subpoenas it issues in this action.

**REQUEST NO. 41:** All Communications with any Third Party, other than Your counsel, concerning this lawsuit.

**RESPONSE:** Sazerac objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportionate to the needs of the case, and seeks information protected from discovery by the work product doctrine and/or attorney-client privilege.

**REQUEST NO. 42:** All Documents and Communications, including internal Communications and Communications with Third Parties, that are responsive to any of the search terms set forth in the ESI Search Terms attached hereto as **Exhibit A**, when run against the custodians, data sources, and date ranges identified in the ESI Protocol attached hereto as **Exhibit B** and in accordance with the procedures set forth therein.

**RESPONSE:** Sazerac objects to this Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, seeks information that is not relevant to any claim or defense in the action, and seeks documents protected from discovery by the work product doctrine and/or the attorney-client privilege. Sazerac further objects that this Request seeks highly confidential commercial information, the dissemination of which would be damaging

to Sazerac's business. Additionally, Sazerac objects that the custodians, data sources, date ranges and procedures proposed in Exhibits A and B are overbroad, unduly burdensome, and not proportionate to the needs of the case. Sazerac objects that Plaintiff is not entitled to unilaterally impose search terms, custodians, data sources, date ranges, and procedures. Sazerac is willing to meet and confer regarding a reasonable search protocol and ESI protocol, but objects to producing documents in response to this Request as written.

**REQUEST NO. 43:** Pursuant to Federal Rule of Civil Procedure 34(a)(1)(B), for inspection, testing, sampling, and photographing, one (1) sealed, unopened, commercially representative example of each and every SKU, bottle size, label variation, and Packaging configuration of Fireball Malt sold, offered for sale, distributed, or shipped in or to the State of Florida during the Class Period, together with one (1) sealed, unopened, commercially representative example of each and every comparable SKU, bottle size, label variation, and Packaging configuration of Fireball Whisky sold, offered for sale, distributed, or shipped during the Class Period that shares a bottle size or Packaging configuration with any Fireball Malt SKU. For each example produced, identify (a) the SKU identifier; (b) the bottle size; (c) the label version and the dates during which that label version was in market; (d) the Packaging configuration (including any carton, multipack, point-of-sale display, or neckband in which the bottle was sold); (e) the TTB COLA identification number (if applicable); and (f) the date and location of manufacture, bottling, or acquisition. The examples shall be produced in their original, sealed, commercially distributed form. For each multi-unit Packaging configuration (e.g., a 10-pack or case-pack of 50mL bottles), one complete Packaging unit shall be produced in its original sealed condition. For Fireball Malt SKUs no longer in production, Defendant shall produce one example from its archives, reference library, regulatory-submission samples, litigation-hold samples, or, if none is available, the closest substitute together with a written explanation of the unavailability. Inspection shall take place at a mutually agreed location within the Southern District of Florida on a date to be agreed upon by the parties, or, at Plaintiff's election and Defendant's expense, the examples may be shipped to Plaintiff's counsel at an address to be provided. Plaintiff reserves the right to photograph, measure, weigh, and visually compare the examples, and to retain the examples as demonstrative exhibits for use in this litigation, including at deposition, class certification briefing, summary judgment briefing, and trial.

**RESPONSE:** Sazerac objects to this Request on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of the case, seeks information that is not relevant to any claim or defense in this action, and seeks written disclosures that fall outside the scope of Rule 34. Sazerac further objects to this Request on the grounds that it implicates legal prohibitions

against shipment of alcoholic beverages. Notwithstanding these objections, Sazerac will produce the relevant COLAs and copies of the labels of Fireball Malt as sold in Florida.

Dated: June 5, 2026 Respectfully submitted,

JONES FOSTER P.A.

*/s/ Joanne M. O'Connor*
Joanne M. O'Connor
Florida Bar No: 498807
505 South Flagler Drive, Suite 1100
West Palm Beach, FL 33401
(561) 659-3000
joconnor@jonesfoster.com

Creighton R. Magid (application *pro hac vice* forthcoming)
Katherine E. Canning (application *pro hac vice* forthcoming)
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W. Suite 900
Washington, D.C. 20005
(202) 442-3555
magid.chip@dorsey.com
canning.katherine@dorsey.com

*Attorneys for Defendant Sazerac Company, Inc.*

#7920205 v1 32795-00003