**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

RAFAEL HERNANDEZ, individually and on behalf of all others similarly situated,

Plaintiff,

No. 1:25-CV-24568-PCH/LFL

v.

**CLASS ACTION**

SAZERAC COMPANY, INC.,

Defendant.
_______________________________________/

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO MODIFY SCHEDULING ORDER AND TO CONTINUE TRIAL**

Plaintiff Rafael Hernandez, pursuant to Local Rule 7.1(c), submits this Reply in support of his Motion to Modify Scheduling Order and to Continue Trial [ECF No. 25] (the "Motion") and in reply to Defendant Sazerac Company, Inc.'s Response [ECF No. 27] (the "Response").

**INTRODUCTION**

Sazerac's Response concedes an extension is warranted. Sazerac "wishes to provide reasonable accommodation to any counsel faced with personal or family medical issues," agrees that counsel's family medical emergency "warrants consideration," and "agrees that the case schedule should be modified slightly." Resp. at 1, 4. In Sazerac's words, "[t]he issue is how much of an extension such issues require." Resp. at 1. And Sazerac proposes its own yardstick: two weeks, "absent a showing that the family member's hospitalization lasted longer than two weeks." Resp. at 4.

The Supplemental Declaration of Christopher Gold, filed with this Reply, makes that showing. The emergency began in March 2026. It did not end until the family member was discharged from the hospital on July 17, 2026—three days after the Motion was filed. It ran four months. The requested extension runs four months. The Response's remaining arguments—that

the discovery record shows delay rather than diligence, and that the withheld documents would not matter anyway—fail on the record and on Sazerac's own litigation history. The Motion should be granted.

## ARGUMENT

### A. Sazerac's Own Measure of Good Cause—the Duration of the Emergency—Supports a Four-Month Extension

A scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause exists when the schedule "cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (*per curiam*) (quoting Fed. R. Civ. P. 16 advisory committee's note). A sudden family medical emergency that consumes counsel's capacity for months, through no fault of any party, is such cause. The former Fifth Circuit reversed a judgment because the trial court refused a continuance grounded in counsel's illness. *Smith-Weik Mach. Corp. v. Murdock Mach. & Eng'g Co.*, 423 F.2d 842, 844–45 (5th Cir. 1970) (binding under *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*)). And this District has recognized that counsel's family emergency supplies "a compelling need to continue" scheduled proceedings. *Reddish v. Epoca Corp.*, No. 1:17-cv-21206, ECF No. 45, at 4 n.3 (S.D. Fla. Dec. 14, 2018) (Simonton, Mag. J.) (attached as Exhibit A).

The emergency here began in March 2026, when a close family member suffered the sudden onset of a serious medical condition. Suppl. Gold Decl. ¶¶ 3–6. From onset until hospitalization, her care was not in professional hands; it principally to undersigned counsel, on an essentially daily basis and across international travel undertaken for her care. *Id.* She was then hospitalized, and she was not discharged until July 17, 2026. *Id.* The emergency spanned approximately four months, and its demands did not begin at the hospital door.

Sazerac fairly observes that the Motion did not state the duration of the hospitalization, and it proposes two weeks unless "the hospitalization period was longer." Resp. at 1, 4. The Supplemental Declaration supplies the dates. But the premise—that the accommodation is measured by the inpatient stay—is wrong. In *In re Schultz*, the court held a solo practitioner's missed deadline excusable where his wife's illness made him her sole caregiver over months punctuated by brief hospitalizations: "the serious illness of a spouse and the demands of being the primary caregiver cannot as easily be delegated to another person." *Allied Domecq Retailing USA v. Schultz (In re Schultz)*, 254 B.R. 149, 154–55 (B.A.P. 6th Cir. 2000). The measure is the caregiving burden, which cannot be delegated—and here, the months before hospitalization were the period when that burden rested entirely on counsel.

Courts confronting these circumstances grant the time the emergency actually requires. *See Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. 544, 549–50 (D.N.M. 2011) ("A lawyer should be able to show excusable neglect and good cause when he or she has unexpected turmoil in life."); *Mobu Enters. Pty Ltd v. John Galt Solutions Inc*, No. 3:23-cv-617-BN, 2025 U.S. Dist. LEXIS 94770, at *5 (N.D. Tex. May 19, 2025) (granting opposed continuance because "attorneys, like all professionals, are human beings who encounter personal events that warrant accommodations," and a solo practitioner "does not have co-counsel, an associate, or a subordinate attorney who can assist or replace him").

The public record says no more about the emergency than the dates, because the family member is not a party and her medical circumstances are her own. "A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information," *Romero v. Drummond Co.*, 480 F.3d 1234, 1245–46 (11th Cir. 2007), and courts weighing access consider "the availability of a less onerous alternative," *id.* If additional detail

would assist the Court, Plaintiff will promptly submit a further declaration and supporting medical records for *in camera* review or under seal, in whatever manner the Court directs. Suppl. Gold Decl. ¶ 7.

**B. The Record Shows Diligence**

One correction is owed. Paragraph 2 of the Gold Declaration [ECF No. 25-1] stated that Plaintiff served his first discovery requests on December 15, 2025. That was a scrivener's error: Plaintiff served his First Set of Interrogatories and Requests for Production on April 23, 2026—one month after the Scheduling Order issued. Suppl. Gold Decl. ¶ 2. Plaintiff withdraws the corresponding statement in the Motion and regrets the error.

The corrected timeline is a record of diligence. Plaintiff served comprehensive written discovery within a month of the Scheduling Order. Sazerac responded on June 5—objecting to the substantial majority of the requests and producing no documents, a posture unchanged today. The parties conferred by video on June 11. On July 14, Plaintiff sent a twelve-category deficiency letter, a draft protective order, and a draft ESI protocol. On July 20, Sazerac's counsel advised that he could not respond to the letter until on or about July 22. Suppl. Gold Decl. ¶¶ 8–9.

Sazerac emphasizes that "a month then passed without word from Plaintiff's counsel" between the June 11 conferral and July 14. Resp. at 3. True. That month *is* the emergency constituting good cause. It is the period in which the family member's condition reached crisis and ultimate hospitalization, and it is the disruption for which the Motion seeks relief. The Motion's two grounds are not independent complaints; the second explains the only gap in the first.

Sazerac's lead authority makes the contrast for Plaintiff. In *Esys*, the court denied a further extension because it "ha[d] already granted previous extensions" of the same pretrial deadlines and the movant "d[id] not provide any explanation for the delay in propounding discovery." *Esys*

*Latin Am., Inc. v. Intel Corp.*, 290 F.R.D. 563, 564 (S.D. Fla. 2013). Other than a brief extension of Plaintiff's deadline to respond top Sazerac's motion to dismiss, this is the parties' first request to modify the scheduling order in this action, and the explanation is documented, sworn, and—by Sazerac's own account—"warrants consideration." Resp. at 1.

The two-week extension Sazerac proposes would change nothing. It would expire before a protective order could be negotiated and entered, before a document could be produced under one, and before any expert could analyze what production yields. Sazerac agreed to produce documents only upon entry of a protective order; no order exists, and Sazerac's comments on Plaintiff's draft remain outstanding. Every remaining deadline—expert disclosures, the discovery cutoff, dispositive motions, mediation, trial—is built on that production.

Sazerac's footnote asserting non-compliance with Local Rule 7.1(a)(3) overlooks the record. The parties conferred by video on June 11; Plaintiff's counsel emailed Sazerac's counsel on July 14, before filing, to complete the conferral; and the Motion's certificate disclosed exactly that. On July 16, Plaintiff sent Sazerac a proposed supplemental filing regarding the Motion; the next day, Sazerac's counsel wrote "you may file this as you wish" and refused gave Sazerac's position when requested. Suppl. Gold Decl. ¶ 10. Sazerac's position was before the Court within three days of filing, and it would have been sooner if Defendant's counsel shared it when requested.

### C. The Withheld Discovery Bears Directly on Certification—as Sazerac's Own Litigation History Shows

Sazerac argues that Plaintiff "has failed to articulate why any of the requested documents would be pertinent to a class certification motion or to an expert report," that an expert could instead "measure such a market value difference experimentally," and that the four-month request "appears to reflect an absence of a credible damages theory." Resp. at 3–4.

Certification is not decided on pleadings and expert intuition. "[T]he parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008). And Sazerac has litigated the precise question—what evidence supports certifying a Fireball malt-beverage mislabeling class—and lost. In *In re Sazerac Consumer Litigation*, the court certified New York classes of Fireball malt purchasers on the same trade-dress-mimicry theory advanced here, accepting plaintiffs' conjoint price-premium model under *Comcast* because it was grounded in historical pricing data and actual sales volumes: "the Ingersoll study adequately considers the supply-side factors for purposes of class certification." *Pizzaro v. Sazerac Co.*, No. 23-CV-2751 (KMK), 2025 U.S. Dist. LEXIS 187959, at *23 (S.D.N.Y. Sep. 18, 2025), *Rule 23(f) pet. denied*, Nos. 25-2423, 25-2424 (2d Cir. Feb. 18, 2026). The sales, pricing, and market data Sazerac withholds here is the same category of evidence that underwrote certification there. Sazerac's relevance objection is answered by its own litigation history.

Sazerac notes that Plaintiff filed his class-certification motion on July 16. Resp. at 3; [ECF No. 26]. He did—protectively and in an abundance of caution, because the deadline arrived before the Court could rule on the Motion. Suppl. Gold Decl. ¶ 11. Filing to preserve the client's rights on an incomplete record is diligence; it is not evidence that the record is complete. And the withheld discovery is needed for trial in any event, whatever becomes of certification.

**D. Every Continuance Factor Favors the Requested Relief.**

The Eleventh Circuit weighs the movant's diligence, "the likelihood that the need for a continuance would have been remedied had the continuance been granted," the inconvenience to the court and the opposing party, and the harm the movant would suffer from denial. *Romero v.*

*Drummond Co.*, 552 F.3d 1303, 1320 (11th Cir. 2008) (quoting *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1296 (11th Cir. 2005)). Diligence is shown above. A four-month continuance remedies the need entirely: the protective order, the production, the expert work, and certification briefing on a complete record. The inconvenience is a trial date four months later in a case Sazerac agrees must move in any event. And denial would force the central event of this class action onto an empty record while counsel manages the tail of a four-month family emergency. Local Rule 7.6 is satisfied for the same reasons: the Motion was made in writing before the first affected deadline expired, supported by declaration, on exceptional circumstances.

## CONCLUSION

Sazerac agrees the schedule must move and proposes that the extension track the duration of the emergency. It does: four months, from March 2026 to a July 17, 2026, hospital discharge. The discovery both sides' experts need remains unproduced, and it is the same evidence that certified the same classes against the same defendant in New York and in California. Plaintiff requests that the Court grant the Motion, modify the Scheduling Order [ECF No. 18] to adopt the amended deadlines set forth in the Motion, and grant any other relief the court deems just and proper.

Dated: July 21, 2026

Respectfully submitted,

/s/ Christopher Gold
Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, P.A.**
350 Lincoln Road, 2nd Floor
Miami Beach, FL 33139
Telephone: (305) 900-4653
Email: chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the date set forth above, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will serve a copy upon all counsel of record.

*/s/ Christopher Gold*
Christopher Gold, Esq.

# EXHIBIT A

---

*Reddish v. Epoca Corp., No. 1:17-cv-21206 (S.D. Fla. Dec. 14, 2018)*

*Omnibus Order on Discovery Motions [ECF No. 45]*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-21206-CIV-KING/SIMONTON**

**ROBERT JULIUS REDDISH,**

**Plaintiff,**

**v.**

**EPOCA CORP. D/B/A/ BRADLEY FOUNDATIONS, DAVID BRADLEY, MATTHEW BRADLEY, and SCOTT BRADLEY,**

**Defendants.**

**_________________________________________/**

## OMNIBUS ORDER ON DISCOVERY MOTIONS

**This matter came before the Court for a Discovery Hearing pursuant to Plaintiff's Motion for Protective Order, ECF No. [26], Defendants' Emergency Motion to Continue Defendants' Depositions, ECF No. [27], Defendants' Motion to Compel and for Sanctions, ECF No. [28], and Plaintiff's Motion to Compel Defendants' Attendance at Depositions, Extend the Deadline for Discovery and Dispositive Motions, and for Sanctions, ECF No. [30]. The Plaintiff's response to the Defendant's Motions is included in his Motion to Compel, ECF No. [30]; the Defendants have filed a comprehensive response to the Plaintiff's Motions and reply in support of Defendants' Motions, ECF No. [40]. The Honorable James Lawrence King, United States District Judge, has referred these matters to the undersigned Magistrate Judge, ECF Nos. [29], [31]. On November 19, 2018, the undersigned held a hearing on the Parties' discovery disputes. This Order memorializes the rulings made by the undersigned at that hearing and incorporates by reference the reasons stated on the record.**

## I. BACKGROUND

This action involves claims brought by Plaintiffs Robert Julius Reddish against his former employer Epoca Corp. d/b/a Bradley Foundations and individual defendants David Bradley, Matthew Bradley, and Scott Bradley, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., ("FLSA"), ECF No. [1]. The Plaintiff alleges that the Defendants failed to pay him full and proper overtime compensation and that they retaliated against him by constructively discharging him when he complained about not being paid overtime compensation, ECF No. [1]. According to the Plaintiff's Statement of Claim, the Plaintiff seeks unpaid overtime wages of $7,376.79 for the time period June 2015 through June 2017, as well as an equal amount in liquidated damages, ECF No. [12-1]. The Defendants have filed an Answer in which they deny all allegations of wage violation and retaliation, ECF No. [9].

Under the scheduling order in effect at the time the instant motions were filed, trial was set for March 25, 2019, the discovery deadline was November 3, 2018, and the deadline for all motions to be filed was November 8, 2018. On November 8, 2018, the Defendants filed a Motion to Extend Motion Deadline based upon the need to complete the Plaintiff's deposition, which began on October 30, 2018, but was terminated because of a dispute between the parties, ECF No. [33]. On November 9, 2018, the District Court granted in part the Defendant's Motion, ECF No. [37], and by separate order entered a new Scheduling Order, resetting the trial for June 3, 2019, ECF No. [38]. The discovery deadline has been extended to January 30, 2019, and the deadline to file all motions has been extended to February 4, 2019.

## II. DISCOVERY DISPUTE

The instant dispute involves four inter-related motions: Plaintiff's Motion for Protective Order, ECF No. [26], Defendants' Emergency Motion to Continue Defendants' Depositions, ECF No. [27], Defendants' Motion to Compel and for Sanctions, ECF No.

[28], and Plaintiff's Motion to Compel Defendants' Attendance at Depositions, Extend the Deadline for Discovery and Dispositive Motions, and for Sanctions, ECF No. [30]. All four motions relate to the depositions of the parties which were scheduled to take place on October 30, 2018, and October 31, 2018.

A. Plaintiff's Deposition

Plaintiff's Motion for Protective Order, ECF No. [26], and Defendants' Motion to Compel and for Sanctions, ECF No. [28], address issues arising in connection with the Plaintiff's deposition. Plaintiff's deposition commenced on October 30, 2018. During the deposition, defense counsel attempted to question the Plaintiff about 131-pages worth of documents, described by the Plaintiff as alleged pay records,[1] which Plaintiff contends had never previously been produced to the Plaintiff. The Plaintiff claims that these pay records were responsive to multiple discovery requests. Plaintiff's counsel states that he objected when defense counsel attempted to introduce the unproduced documents and gave notice that he would terminate the deposition and move for a protective order if counsel continued to try and elicit testimony regarding the unproduced documents, provided a second warning, and then terminated the deposition after defense counsel attempted to introduce the documents a third time, ECF No. [26] at ¶¶ 20-35.

The Defendants contend that Plaintiff's counsel forbade the introduction of any exhibits at Plaintiff's deposition, that the Plaintiff was evasive, and that Plaintiff's counsel was disruptive during the deposition, ECF No. [28]. The Defendants suggest that Plaintiff's counsel terminated the deposition purely because Defendants' counsel attempted to introduce exhibits, ECF No. [28] at ¶¶ 3,6,7. As regards the 131 pages of documents, the Defendants maintain that these documents were provided to their prior counsel and it was their understanding that they had been produced in response to the

[1] The Defendants describe the disputed document as "essentially itemized invoices for compensation to Plaintiff," ECF No. [40] at p. 5.

Plaintiff's Request for Production, served on May 18, 2017. In his Motion for Protective Order, ECF No. [26], the Plaintiff states that the Defendants provided no response and produced only two documents in response to the 67 requests.[2]

The Plaintiff seeks a protective order preventing the Defendants from deposing the Plaintiff as to the unproduced alleged pay records, ECF No. [26]. The Defendants seek an order compelling the Plaintiff's appearance at deposition and to tax the Plaintiff with the cost of continuing his deposition, ECF No. [28]. Both sides seek their fees and costs associated with the preparation of their respective motions pursuant to FRCP 37.

B. Defendants' Depositions

Defendants' Emergency Motion to Continue Defendants' Depositions, ECF No. [27], and Plaintiff's Motion to Compel Defendants' Attendance at Depositions, Extend the Deadline for Discovery and Dispositive Motions, and for Sanctions, ECF No. [30], address issues surrounding the depositions of the Defendants. The Defendants' depositions were scheduled to take place on October 31, 2018, and included depositions of the three individual defendants, and a deposition of the corporate representative of the Defendant corporation, pursuant to Rule 30(b)(6), were scheduled to take place on October 31, 2018.

According to the Defendant, a family health emergency arose without warning which required defense counsel to travel to New York City on October 31, 2018, necessitating the continuation of the Defendants' depositions.[3] The Defendant states that he contacted Plaintiff's counsel before the first deposition to notify him of the

---

[2] The Defendants are not in possession of the discovery responses previously provided to Plaintiff's counsel, nor have they been able to obtain the entire client file from previous counsel, although they are in the possession of the responses to interrogatories and requests for admissions that were prepared by the previous counsel, ECF No. [40] at ¶ 7.

[3] Defense counsel provided additional information regarding his family emergency to the undersigned at the hearing on November 19, 2018. The undersigned found defense counsel's account of his family emergency to be truthful and to provide a compelling need to continue the Defendants' depositions. Out of respect for the privacy of defense counsel and his family, the details of the emergency are not included herein.

**emergency and need to continue the depositions, offered to delay his flight so the first deposition could continue at 9:30 a.m., and appeared at Plaintiff's counsel's office with the deponent at 9:30 a.m. Defendants' counsel states that the Plaintiff objected to continuing the depositions and threatened sanctions, and that Plaintiff's counsel left his office prior to 9:30, so that even the first deposition could not go forward, ECF No. [27].**

**According to Plaintiff, Defendants' counsel did not contact him until after the first deposition was scheduled to commence at 9:00 a.m., stated that no defendants would be appearing for deposition that day, and did not arrive at Plaintiff's office until 9:38 a.m., at which point the court reporter had already been dismissed, ECF No. [30] at ¶¶ 41-42.**

**The Defendants have filed a Motion to Continue their depositions, seeking to have them rescheduled for a date after the resolution of Defendants' counsel's family emergency, and seeking extension of any relevant discovery deadlines, ECF No. [27]. The Plaintiff has filed a Motion to Compel the Defendants' attendance at depositions, to extend the deadlines for discovery and dispositive motions, and for sanctions against the Defendants and their counsel pursuant to FRCP 37, to include an award of the Plaintiff's attorney's fees associated with the Defendants' cancelled October 31, 2018, depositions and the preparation of the instant motions and the costs of Court reporter attendance, ECF No. [30].**

## III. ANALYSIS

**Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope,* 730 F.2d 729, 731 (11th Cir.1984). The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party. *See Westrope,* 730 F.2d at 731. The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be**

**based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *See United States v. Proctor & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).**

**Federal Rule of Civil Procedure 37(c) "provides the consequences for a party's failure to disclose, pursuant to the requirements of Rule 26." *Nance v. Ricoh Elecs, Inc*., 381 Fed. App'x 919, 922 (11th Cir. 2010). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id*. (citing Fed. R. Civ. P. 37(c)(1)); *Cooley v. Great S. Wood Preserving*, 138 Fed. App'x 149, 161 (11th Cir. 2005) (same). In determining whether the failure to disclose was justified or harmless, we consider the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted. *Romero v. Drummond Co.,* 552 F.3d 1303, 1321 (11th Cir. 2008).**

### A. <u>Plaintiff's Motion for Protective Order, ECF No. [26] and Defendants' Motion to Compel and for Sanctions, ECF No. [28]</u>

**The Plaintiff has filed a motion for a protective order preventing the Defendants' from deposing the Plaintiff over 131 pages of alleged pay records that were allegedly not produced to the Plaintiff prior to October 30, 2018, ECF No. [26]. The Plaintiff argues that the Defendants are attempting to "sandbag" the Plaintiff with the documents after failing to produce them in discovery throughout the course of 1.5 years of litigation, ECF No. [26] at 5. The Plaintiff contends that that Defendants' failure to disclose the documents was in bad faith, highly prejudicial to the Plaintiff, and oppressive, ECF No. [26] at 6. At the hearing, the Plaintiff additionally sought a protective order limiting the continuation of the Plaintiff's deposition solely to 131 pages of pay records, because the Plaintiff contends that defense counsel had otherwise completed his questioning of the Plaintiff**

and should not rewarded with a second bite at the apple as a result of the failure to timely produce the pay records.

Conversely, the Defendants have filed a motion seeking to compel the Plaintiff's appearance at deposition, ECF No. [28], in which they contend that Plaintiff was evasive, his counsel was disruptive, and that Plaintiff's counsel improperly terminated the Plaintiff's deposition because the Defendant attempted to introduce exhibits, ECF No. [28]. In his Response, the Plaintiff attacks the facts recited in the Defendant's Motion to Compel on a virtually paragraph by paragraph basis. The Plaintiff's attacks on the Defendants' Motion, however, do not generally go to the substantive question of whether the Plaintiff should be compelled to appear and testify regarding the alleged pay records.

As previously noted, the court considers the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted in determining whether a party's failure to disclose was justified or harmless. *Romero,* 552 F.3d at 1321. In the instant action, the information is highly relevant to the claims at issue, as alleged pay records go directly to the substance of the Plaintiff's claim for unpaid wages. Given that the information was produced on October 30, 2018, if not earlier, the Plaintiff and his counsel have now had over two weeks to review such information, so they will not be "sand-bagged" by the introduction of these documents at the continuation of the Plaintiff's deposition. Whatever the reason that the documents may not previously have been produced, there has been no prejudice to the Plaintiff given the two weeks he has had to review the documents and the extension of the discovery and motion deadlines and trial date. Therefore, the parties will cooperate to reschedule the continuance of the deposition of the Plaintiff to take place prior to the close of discovery. The scope of the deposition will not be limited to any particular issues or documents, but defense counsel shall be limited in that the Plaintiff's deposition should not exceed seven hours in total.

**Thus, unless otherwise agreed by the parties, a maximum of four hours remains for the completion of Plaintiff's deposition; the exact time can be determined by the parties based on the transcript from the October 30, 2018, deposition.**

**At the hearing, counsel for the Plaintiff for the first time sought relief related to additional outstanding discovery, but no motion has been previously filed to compel any outstanding discovery and, given the date the Defendants' responses were due, the deadline to file a motion to compel for much of the discovery sought by the Plaintiff has long since passed.[4] The parties, however, have reached an agreement that the Defendant will respond to all remaining outstanding discovery requests and produce all responsive documents at least 14 days prior to the continuation of the Plaintiff's deposition.**

### B. Defendants' Emergency Motion to Continue Defendants' Depositions, ECF No. [27] and Plaintiff's Motion to Compel Defendants' Attendance at Depositions, Extend the Deadline for Discovery and Dispositive Motions, and for Sanctions, ECF No. [30]

**On October 31, 2018, the Defendants filed a motion to continue the Defendants' depositions to a later date as a result of defense counsel's family emergency, ECF No. [27]. The Plaintiff has also filed a Motion to Compel the Defendant's depositions, ECF No. [30].[5]**

**[4] *See* Local Rule 26.1(g) ("All disputes related to discovery shall be presented to the Court by motion (or, if the Court has established a different practice for presenting discovery disputes, by other Court-approved method) within (30) days from the: (a) original due date (or later date if extended by the Court or the parties) of the response or objection to the discovery request that is the subject of the dispute; (b) date of the deposition in which the dispute arose; or (c) date on which a party first learned of or should have learned of a purported deficiency concerning the production of discovery materials. Failure to present the dispute to the Court within that timeframe, absent a showing of good cause for the delay, may constitute a waiver of the relief sought at the Court's discretion.").**

**[5] Plaintiff's Motion to Compel Defendants' Attendance at Depositions, Extend the Deadline for Discovery and Dispositive Motions, and for Sanctions, ECF No. [30] also sought extension of certain deadlines, but that request has been mooted by the District**

The Plaintiff's Response to the Defendants' Motion to Continue, which attacks various aspects of defense counsel's actions with respect to his personal emergency, is not well taken. The Rules of Professional Conduct require attorneys to engage courteously and respectfully with another. Plaintiff's counsel's attacks on defense counsel's personal decisions with respect to his family emergency are inappropriate and unprofessional.

In any event, both parties seek to reschedule the Defendants' depositions and the Court has already extended the discovery and motion deadlines, such that ample time is available for the depositions to take place. Thus, the parties will cooperate to reschedule the Defendants' depositions to take place prior to the close of discovery.

## IV. SANCTIONS

In their Motion to Compel and for Sanctions, ECF No. [28], seeking the continuance of the Plaintiff's deposition, the Defendants have sought an award of the fees and costs associated with the preparation of the motion, ECF No. [28]. Similarly, the only remaining issue as to Plaintiff's Motion to Compel Defendants' Attendance at Depositions, Extend the Deadline for Discovery and Dispositive Motions, and for Sanctions, ECF No. [30], is the Plaintiff's request for sanctions against the Defendants and their counsel in connection with the cancellation of their depositions.

Given the Defendants' alleged failure to produce the pay records prior to the deposition, the undersigned will not award sanctions against the Plaintiff or his counsel for the termination of the Plaintiff's deposition.

At the hearing, Plaintiff's counsel sought an award of fees for two hours of deposition preparation conducted the night before the scheduled depositions at a rate of $350.00 per hour, as well as an award of the $115.00 in court reporter costs that were

Court's Order Vacating Scheduling Order, ECF No. [37], and Scheduling Order, ECF No. [38].

**incurred as a result of the last minute cancellation. Given the extenuating circumstances of defense counsel's family emergency and the fact that any deposition preparation conducted by Plaintiff's counsel will be applicable to the rescheduled depositions, the undersigned does not believe that an award of attorney fees is appropriate. Plaintiff is entitled, however, to an award of the court reporter fee, as that cost was incurred by the Plaintiff, through no fault of the Plaintiff's, as a result of the last-minute cancellation of the depositions by the Defendants.**

## **II. <u>CONCLUSION</u>**

**Accordingly, it is**

ORDERED AND ADJUDGED **that the Plaintiff's Motion for Protective Order, ECF No. [26], is** DENIED**; the Defendants' Emergency Motion to Continue Defendants' Depositions, ECF No. [27], is** GRANTED**; the Defendants' Motion to Compel and for Sanctions, ECF No. [28], is** GRANTED in PART**; and Plaintiff's Motion to Compel Defendants' Attendance at Depositions, Extend the Deadline for Discovery and Dispositive Motions, and for Sanctions, ECF No. [30] is** GRANTED IN PART **as to the request for payment of the court reporter's fee, and is otherwise** DENIED AS MOOT**. It is further**

ORDERED AND ADJUDGED **that the parties will cooperate to reschedule the continuance of the deposition of the Plaintiff and the depositions of the Defendants to take place prior to the close of discovery; the Defendants will provide any outstanding discovery responses and responsive documents to the Plaintiff at least 14 days prior to the continuation of the Plaintiff's deposition. It is further**

ORDERED **that the Defendants will pay the $115.00 court reporter fee associated with the cancelled depositions of the Defendants to Koz Law, P.A. on or before December**

**19, 2018.**

DONE AND ORDERED **in Miami, Florida, this 14th day of December, 2018.**

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies via CM/ECF to:**
**The Honorable James Lawrence King, United States District Judge**
**All parties of record**