**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:25-cv-24568-HUCK/LOUIS**

RAFAEL HERNANDEZ, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

SAZERAC COMPANY, INC.,

Defendant.

CLASS ACTION

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Plaintiff Rafael Herandez's motion to compel should be denied, both because it was filed without a conference in violation of Local Rule 7.1(a)(3) and because the requests at issue are overly broad, not proportionate to the needs of the case, and seek documents that have no relevance to the issues in the case.

Plaintiff Rafael Hernandez served 43 overly broad document requests on defendant Sazerac Company, Inc. ("Sazerac"). Most of the requests sought information that was not relevant to the claims or defenses in the case and were wholly disproportionate to the needs of the case. Sazerac served responses to each of the Requests on June 5, 2026. Three days later, Sazerac's counsel emailed Plaintiff's counsel and offered to explain and discuss the bases for each of Sazerac's objections. Declaration of Creighton Magid at ¶ 2. Hernandez's counsel agreed and the parties held a videoconference on June 11, 2026. *Id*. at ¶ 3.

On the videoconference, Sazerac's counsel explained that the entry of a protective order would obviate the confidentiality objections. *Id*. at ¶ 4. The parties next addressed the scope of Hernandez's requests for sales and pricing information. *Id*. at ¶ 5. Sazerac's counsel explained

that Sazerac, by law, could only sell to distributors and not directly to retailers, so that the retail pricing information that Sazerac had came from third-party providers. *Id*. Sazerac's counsel then explained that the third-parties' licensing agreements precluded Sazerac from producing the retail price information, but that other plaintiffs' counsel had obtained the pricing information by subpoenaing the third-party providers. *Id*. Hernandez's counsel said that he would confer with his damages expert as to what information the expert truly needed. *Id*. at ¶ 6. Hernandez's counsel also said that not all of the Requests were of equal importance and that some were "not that important." *Id*. at ¶ 7. Sazerac's counsel asked that Hernandez's counsel identify what he truly needed; Hernandez's counsel agreed. *Id*. Although Sazerac's counsel had been prepared to discuss the bases for every objection made to the Requests, Hernandez's counsel chose not to discuss the objections and instead stated that he believed the scope of many requests could be narrowed. *Id*. at ¶ 8. Hernandez's counsel said that he would prepare a letter outlining potential compromises and a path forward. *Id*. He also stated that he would draft a proposed protective order. *Id*.

A month passed without word from Plaintiff's counsel. Declaration of Creighton Magid at ¶ 9. Then, at 7:55 p.m. on July 14, 2026, Hernandez's counsel emailed a draft protective order and a nine page, single-spaced letter regarding Sazerac's discovery responses. *Id*. Although Hernandez's counsel had promised a letter proposing narrowed requests, the letter instead merely took issue with Sazerac's objections. *Id*. Furthermore, although it had taken Hernandez's counsel a month to draft the letter, the letter demanded a response within six days. *Id*. During the six-day period, Sazerac had to respond to another motion filed by Hernandez, a motion to modify the deadlines in the case. *Id*. at ¶ 10.

Without even attempting to confer with Sazerac's counsel as required by Local Rule

7.1(a)(3) and the Court's Discovery Practices and Procedures, Hernandez filed his motion to compel on July 21, 2026. Declaration of Creighton Magid at ¶ 11.

On July 28, 2026, Judge Huck entered an agreed protective order in this case. Three days later, Sazerac produced 30,550 documents documents, totaling 158,998 pages, in response to Hernandez's requests. Declaration of Creighton Magid at ¶ 12.

## ARGUMENT

### I. THE MOTION SHOULD BE DENIED FOR FAILURE TO CONFER AS REQUIRED BY LOCAL RULE 7.1(a)(3).

Local Rule 7.1(a)(3) requires that prior to filing a motion to compel, counsel must confer, or make reasonable efforts to confer, with opposing counsel "in a good faith effort to resolve by agreement the issues to be raised in the motion." Local Rule 7.1(a)(3). The Court's Discovery Practices and Procedures provide that "[b]efore the parties are permitted to bring a discovery dispute before the Court, the parties must first confer in a good faith effort to resolve the dispute in compliance with Local Rule 7.1(a)(3)." The Court's Discovery Practices and Procedures further specifies that "counsel must certify that the parties made good faith efforts to resolve or narrow the dispute and identify the date(s) on which conferral occurred and the means of communication used. An adequate certificate of conference almost always requires at least one, if not more, live conversations between counsel."

Hernandez filed his motion to compel without making *any* effort to confer with Sazerac's counsel to resolve the issues raised in his motion; he simply filed his motion. Nor did Hernandez's counsel fulfill his promise of identifying which requests were most important and what Hernandez truly needed, and his promise to narrow Hernandez's requests. The Court should deny Hernandez's motion for non-compliance with Local Rule 7.1(a)(3) and the Court's Discovery Practices and Procedures.

## II. THERE IS NO MERIT TO PLAINTIFF'S MOTION.

### A. Hernandez's "Sales, Pricing, and Cost Discovery" Goes Well Beyond What is Relevant and Proportionate to the Needs of the Case.

Hernandez has requested an extensive volume and variety of documents concerning the cost of producing Fireball Cinnamon malt beverage ("Fireball Malt") and Fireball Cinnamon Whisky ("Fireball Cinnamon"); "transaction-level data" for every sale of Fireball Malt and Fireball Whisky; shipping information; "price-list archives, trade-promotion programs, rebate programs, and discounting programs for Fireball Malt and Fireball Whisky;" and more – even the proprietary *ingredients* in Fireball Malt. An example is Request No. 21:

> All accounting records, profit-and-loss statements, sales journals, general ledgers, and similar records showing transaction-level sales data for Fireball Malt and Fireball Whisky in the state of Florida during the Class Period, produced in a structured electronic format (such as .csv), reflecting monthly unit sales, gross revenue, and net revenue for each Fireball Malt SKU and each Fireball Whisky SKU sold in Florida during the Class Period, and containing at minimum the following fields: SKU identifier; product description; ship-from location; ship-to state; ship-to Distributor or Retailer; shipment date; unit volume; case equivalent; gross wholesale price; invoiced amount; trade promotion, rebate, or discount amount; and net revenue.

Apart from total sales in Florida – both in units and in dollars, which Sazerac has agreed to provide – none of the information requested by Hernandez is relevant to the litigation. The requests are outlandishly overbroad and are wholly disproportionate to the needs of the case.

This is a UDTPA case in which Hernandez claims that the labeling on bottles of Fireball Malt misled at least some purchasers to believe that they were purchasing Fireball Whisky – notwithstanding the fact that Fireball Malt labels identify the product as a malt beverage and the fact that Fireball Malt is sold exclusively at locations that do not sell Fireball Whisky or any other distilled spirit. As Hernandez explains in his motion, his purported measure of damages is the difference between the price paid for Fireball Malt and the "*market value*" of Fireball Malt – that is, what the price would be if the label were different (presumably even more emphatically

describing the product as a malt beverage). Mot. at 4 (citing *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 986-87 (11th Cir. 2016)). The sales, production costs, ingredients, and pricing of *Fireball Whisky* clearly has nothing to do with this analysis. Nor does any of the information sought regarding costs, margins, ingredients, "transaction-level data," and the like of Fireball Malt have any relevance to determining the "market value" of Fireball Malt with a hypothetical alternative label. Typically, determining the "market value" of a product with an alternative label involves a choice-based conjoint survey. *See, e.g., In re NJOY Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1118 (C.D. Cal. 2015) (A conjoint survey "is a statistical technique capable of using survey data to determine how consumers value a product's individual attributes – often called the market's willingness to pay."). None of the information requested by Hernandez has anything to do with such a survey – or with "market value."

Hernandez also misses the point of line pricing. "Line pricing" means that *all* Sazerac single-serving products, regardless of brand (Fireball, Southern Comfort, Parrot Bay, 99, etc.), and whether spirit-based or malt-based, have the same suggested retail price, despite different costs, different margins, and different levels of consumer demand. Because line-pricing is independent of cost and margin, Sazerac's line-pricing strategy undercuts, rather than supports, Hernandez's demands for cost and margin information.

Hernandez has simply carpet-bombed Sazerac with requests for information that have no bearing at all on the issues in the case – requests that would tie up Sazerac personnel for weeks. "The discovery rules are not a ticket . . . to an unlimited never-ending exploration of every conceivable matter that captures an attorney's interest." *Atico Int'l USA, Inc. v. Luv N' Care, Ltd*., 2010 U.S. Dist. LEXIS 153655, at *9 (S.D. Fla. 2010) (quoting *Sommerfield v. City of Chicago*, 251 F.R.D. 353, 358 (N.D. Ill. 2008)). Until and unless Hernandez can articulate why any of the

requested information is pertinent, the Court should deny Hernandez's motion to compel.[1]

### B. Hernandez's Requests for "Physical Products" and Labels that Do Not Appear in Florida Are Improper.

Hernandez takes issue with Sazerac's objection to producing images of Fireball Malt labels that do not appear in Florida and to producing documents that refer exclusively to labels that do not appear in Florida. Such images and documents have no relevance to the litigation, which exclusively concerns Fireball Malt sold to Florida consumers.

Because different states have different laws concerning malt beverages, there are versions of Fireball Malt that have a different amounts of alcohol (measured as "alcohol by volume" or ABV) than the version sold in Florida. Labels of products that members of the putative class – Florida residents who purchased Fireball Malt in Florida – would never see are patently irrelevant, as are documents, such as printers' proofs and design files, that refer exclusively to labels that do not appear in Florida.

Nor does Hernandez explain why Sazerac should provide alcohol-filled bottles of both Fireball Malt and Fireball Whisky, in every size sold. These items are readily available for sale; Hernandez is free to purchase them. Hernandez also has not explained the need for special promotional labels for holidays such as Valentine's Day and Christmas. Unless Hernandez can explain why the image of a candy cane or holly on a label is pertinent to his claim, the motion should be denied.

---

[1] In the introduction to his motion, Hernandez asserts that Sazerac frequently objected to requests on similar grounds. That is because nearly all of Hernandez's requests were of the same ilk: seeking irrelevant information, disproportionate to the needs of the case, overly broad, and unduly burdensome. The whole point of the conference that Sazerac proposed on June 8, 2026, was for Sazerac's counsel to explain each of the objections and to discuss ways to narrow the requests. That Hernandez's counsel elected not to discuss the objections makes Hernandez's assertion that there was "no explanation tied to any particular request" ring hollow.

### C. Hernandez's Request for Complete Document Files from Six Other Litigation Matters is Improper.

Hernandez's Request No. 33 seeks

> All document productions, deposition transcripts and exhibits, declarations, expert reports, expert disclosures, and written discovery responses served, produced, or received by You in the following actions: *Puig v. Sazerac Co*., No. 2:23-cv-856 (M.D. Fla.); *McKay v. Sazerac Co., Inc.*, No. 23-cv-00522 (N.D. Cal.); *Myers v. Sazerac Co., Inc*., No. 3:23-cv-522 (N.D. Cal.); *Pizzaro v. Sazerac Co*., No. 23-cv-2751 (S.D.N.Y.); *Andrews v. Sazerac Co*., No. 23-cv-1060 (S.D.N.Y.); and *PAN AM Props., Corp. v. Sazerac Co., Inc*., KLCE202500119 (P.R.).

Such "piggy-back" requests are improper. *See, e.g., Bhatia v. Silvergate Bank*, 2024 WL 3929887, at *4 (S.D. Cal. Aug. 23, 2024) ("Even if each and every document produced in the previous litigation is relevant to Plaintiffs' claims, Plaintiffs must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses.") (quoting *Rumble, Inc. v. Google LLC*, 2023 WL 3751797, at *7 (N.D. Cal., May 31, 2023)); *Racing Optics v. Aevoe Corp*., 2016 WL 4059358, at *1 (D. Nev., July 28, 2016)("'Piggyback' discovery requests are prohibited. [The requesting party] 'must specifically ask for the documents he wants and be able to demonstrate that the information he seeks is relevant to his claims in this case.'") (quoting *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *3 (S.D. Cal. Aug. 14, 2009)); *Atico Int'l USA*, 2010 U.S. Dist. LEXIS 153655, *9-11 (requests for documents produced in other litigation matters are overly broad and unduly burdensome).

*United Oil Co. v. Parts Assocs., Inc*., 227 F.R.D. 404 (D. Md. 2005), cited by Hernandez, says nothing to the contrary. *United Oil* did not involve a request for "all documents" produced or received in prior litigation; rather, it merely states that in a failure to warn case, evidence of other claims may be discoverable to establish prior notice or causation. *Id*. at 410-11. Hernandez also misreads *Bhatia.* As quoted above, *Bhatia* clearly holds that requests for all documents

produced in other litigations are improper. Hernandez refers to footnote 5, which summarizes *Rumble,* and selectively quotes one line from that summary: "courts will allow discovery when the previous litigation . . . and the present case 'have significant factual and legal overlap' and involve the same legal claims." Mot. at 6. But Hernandez conveniently fails to quote the remainder of the sentence, which says, "[t]his does not mean that the 'similarities are . . . enough to require a *carte blanche* production of all documents" from the prior investigations." *Bhatia*, 2024 WL 3929887, at *4 n. 5 (quoting *Rumble*, 2023 WL 3751797, at *7). Indeed, the court in *Rumble* made it clear that even where there was "significant factual and legal overlap," a party could not simply make "piggyback" or "cloned discovery" requests:

> It may very well be that each and every document produced in the government investigations is relevant to Plaintiff's claims. However, Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses.

*Rumble*, 2023 WL 3751797, at *7 (quoting *King County v. Merrill Lynch & Co*., 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011)).

Hernandez's "piggyback" request for all documents in six other cases is plainly improper. The motion to compel should therefore be denied.

### D. Hernandez's Requests for Shelf Placement and Sales Training Materials are Improper.

Hernandez makes broad requests for all "merchandising materials" provided to distributors and retailers, including all planograms and shelf-placement suggestions, all sales training materials, and all communications with distributors and retailers concerning Fireball Malt (which presumably includes purchase orders and delivery tickets). None of this is relevant to any claim or defense in the litigation. The claim is that the *labels* on bottles of Fireball Malt mislead consumers. How Sazerac trains its sales people, Sazerac's suggestions for shelf placement, and

holiday promotional materials have no bearing on that claim. Hernandez's requests are overly broad and seek irrelevant information. The motion to compel should be denied.

Hernandez also mischaracterizes Sazerac's responses as "unilaterally narrowing" Hernandez's requests. To the contrary, Sazerac simply made clear that it would not produce documents that pertained exclusively to versions of Fireball Malt not sold in Florida. (For example, Certificates of Label Approval issued for labels in states other than Florida would have no relevance to this action, which pertains to labels on products purchased by Florida residents.) Notwithstanding that narrow exception, Sazerac has produced nearly 159,000 pages of documents. Sazerac has not "unilaterally narrowed" Hernandez's requests; rather, consistent with the Rules, it has made clear that it will produce (and has produced) much of what Hernandez seeks, while explaining what it will not produce.

Hernandez jumped the gun in bringing this motion. If, after reviewing the production, he still feels that Sazerac has somehow "unilaterally narrowed" his requests, Sazerac invites Hernandez to raise any concerns. At this point, however, there is no basis for a motion to compel.

## CONCLUSION

Hernandez's requests are less a fishing expedition than they are industrial trawling. The majority of Hernandez's requests have no relevance to this case, are wildly disproportionate to the needs of the case, and place an undue burden on Sazerac. Hernandez also failed to undertake any effort to confer with Sazerac prior to bringing his motion. The motion to compel should be denied.

Dated: August 4, 2026

Respectfully submitted,

JONES FOSTER P.A.

*/s/ Joanne M. O'Connor*
Joanne M. O'Connor
Florida Bar No: 498807
505 South Flagler Drive, Suite 1100
West Palm Beach, FL 33401
(561) 659-3000
joconnor@jonesfoster.com

Creighton R. Magid (admitted *pro hac vice*)
Katherine E. Canning (*pro hac vice* application forthcoming)
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W. Suite 900
Washington, D.C. 20005
(202) 442-3555
Magid.chip@dorsey.com
Canning.katherine@dorsey.com

*Attorneys for Defendant Sazerac Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By: /s/Joanne M. O'Connor
Joanne M. O'Connor

**HERNANDEZ v SAZERAC**
**Case No. 1:25-cv-24568-HUCK/LOUIS**
**SERVICE LIST**

Christopher Gold, Esq.
GOLD LAW, PA
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
305-900-4653
chris@chrisgoldlaw.com
*Counsel for Plaintiff and the Proposed Class*

Garrett Berg, Esq.
GARRETT BERG LAW, P.A.
555 NE 15th St., PH A
Miami, FL 33132
garrett@gberglegal.com
*Counsel for Plaintiff and the Proposed Class*

Joanne M. O'Connor
JONES FOSTER P.A.
505 South Flagler Drive, Suite 1100
West Palm Beach, FL 33401
561-659-3000
joconnor@jonesfoster.com
*Attorneys for Defendant Sazerac Company, Inc.*

Creighton R. Magid (*admitted PHV*)
Katherine E. Canning (*pro hac vice forthcoming*)
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W. Suite 900
Washington, D.C. 20005
202-442-3555
magid.chip@dorsey.com
canning.katherine@dorsey.com
*Attorneys for Defendant Sazerac Company, Inc.*

#8072754 v1 32795-00003