**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

RAFAEL HERNANDEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SAZERAC COMPANY, INC.

Defendant.
_______________________________________/

No. 1:25-cv-24568-PCH/LFL

**CLASS ACTION**

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

Defendant's Opposition answers a motion Plaintiff did not file. It opposes production of "the proprietary ingredients in Fireball Malt," which the Motion does not seek. (Opp. 4, 5.) It counts "43 overly broad document requests," when the Motion seeks relief as to five interrogatories and fourteen requests. (Opp. 1.) And it recasts Plaintiff's damages measure as the price of Fireball Malt against itself "if the label were different," when the measure is the difference between the product delivered and the product it was dressed to resemble. (Opp. 4–5.) The premise of every relevance objection is that this is a labeling case. It is not. This Court held that Plaintiff "does not challenge the Fireball Malt label on its own" and that the alleged deception "arises from Defendant's practice of marketing Fireball Malt alongside Fireball Whisky using similar trade dress." [ECF No. 16 at 5.] Two products, and the comparison between them, is what the disputed discovery is about.

**I. Plaintiff Conferred, and the Opposition Describes the Conference.**

Defendant argues the Motion should be denied because Plaintiff filed it "without making any effort to confer with Sazerac's counsel." (Opp. 3.) One page earlier, Defendant describes the conference: its counsel "emailed Plaintiff's counsel and offered to explain and discuss the bases for each of Sazerac's objections," "Hernandez's counsel agreed," and the parties "held a videoconference on June 11, 2026." (Opp. 2; Magid Decl. ¶¶ 2–3.) The conference covered the confidentiality objections, the sales and pricing requests, and the third-party license question — the subjects of this Motion. (Magid Decl. ¶¶ 4–5.) That is a live conversation, and it is the conference the Certificate of Conference describes. [ECF No. 29 at 8.]

Conferral continued in writing. On July 14, Plaintiff served a twelve-category deficiency letter that proposed narrowed scope on several requests and asked for Defendant's position by July 20. (Gold Decl. ¶¶ 5–6 & Ex. 1.) On July 17, Plaintiff asked Defendant to identify any item it knew it would not produce, "so that I can get my motion on file now." (Gold Decl. ¶ 7 & Ex. 2.) On July 20, Plaintiff asked again; Defendant's counsel wrote that he was traveling and had a medical procedure the next day and could not respond until Wednesday. (Gold Decl. ¶¶ 8–9 & Ex. 3.) Plaintiff replied that the motion "will only cover what remains in dispute," that any item Defendant confirmed it would produce would be withdrawn "immediately," and that Plaintiff would gladly talk once counsel returned. (*Id.*)

Plaintiff filed on July 21 because the Local Rules required it. Defendant served its responses on June 4 and 5, 2026; Local Rule 26.1(g)(2) allows twenty-eight days, extendable once by seven, and this Court "strictly enforces" that Rule. Discovery Practices and Procedures for Magistrate Judge Lauren F. Louis ("Discovery Procedures") Pt. III.A. Waiting for a response that could not come until July 22 was not an option Plaintiff had. Finally, the obligation Defendant invokes is not one-sided: "The duty to confer in good faith is reciprocal." *Id*. Pt. III.B.

## II. The Motion Does Not Seek What the Opposition Opposes.

The Opposition twice resists production of Fireball Malt's "proprietary ingredients." (Opp. 4, 5.) Ingredients were sought by Interrogatory No. 11, which the Motion does not include, and by Request No. 26, which Plaintiff narrowed before filing: "Plaintiff does not seek the formula: component-level cost worksheets with formulation details redacted will suffice." (Gold Decl. Ex. 1 § IV.2.) The Motion likewise does not seek all forty-three requests; it seeks Interrogatories 4–7 and 15 and Requests 20–24 and 26–34. [ECF No. 29 at 8.] On sales data it seeks structured transactional data — monthly and annual unit sales, gross and net revenue, trade spend, and discounts, by SKU, for both products. [ECF No. 29 at 5.] The Motion is itself the narrowing Defendant says never arrived.

## III. The Financial and Comparator Data Is Relevant to the Damages Theory Plaintiff Pleads.

Defendant states that Plaintiff's measure is "the difference between the price paid for Fireball Malt and the 'market value' of Fireball Malt — that is, what the price would be if the label were different." (Opp. 4–5.) That is not the measure. FDUTPA damages are "the difference in the market value of the product . . . in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Carriuolo v. Gen. Motors Co.*, 823 F.3d

977, 986 (11th Cir. 2016) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)). Because the model is benefit-of-the-bargain, "the plaintiff's out-of-pocket payment is immaterial." *Id.* at 986–87. The comparison runs between the malt beverage as delivered and the whisky it was dressed to resemble.

Fireball Whisky is the benchmark because Defendant made it one. Its verified answers state that it "line-prices" its products so that "the SRP for each size of its spirits products is also the SRP for the equivalent size of its malt products"; that "the pricing reference for Fireball Malt is the line-price SRP for all spirit products"; and that "the cost of producing Fireball Malt is greater than the cost of producing Fireball Whisky." [ECF No. 29 at 14–16 (Ex. A, Answers to Interrog. Nos. 7, 8, 12).] Defendant now answers that line pricing "is independent of cost and margin" and therefore "undercuts, rather than supports," the requests. (Opp. 5.) That is an argument about what the data will show. It is not a reason to withhold the data that would test it.

Defendant's own authority confirms the need. *In re NJOY* denied class certification because the plaintiffs' conjoint model accounted only for the demand side of the market and failed to account for market supply. *In re NJOY, Inc. Consumer Class Action Litig*., 120 F. Supp. 3d 1050 (C.D. Cal. 2015). The supply-side inputs — prices, costs, discounts, and trade spend — are precisely what Defendant withholds. *NJOY* is a Rule 23 decision about an expert model; it says nothing about the scope of discovery, and it does not hold that a conjoint survey is required. A defendant does not select the plaintiff's damages methodology, and it certainly does not do so as a ground for refusing the inputs to that methodology.

Nor has Defendant carried its burden. Once relevance appears, the objecting party "must . . . show that the requested discovery has no possible bearing on the claims and defenses in this case." *Milinazzo v. State Farm Ins. Co*., 247 F.R.D. 691, 695 (S.D. Fla. 2007). Conclusory assertion does not suffice: the resisting party "must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (quoting *Josephs v. Harris Corp*., 677 F.2d 985, 992 (3d Cir. 1982)). Defendant's footnote 1 explains that its objections were identical because "nearly all of Hernandez's requests were of the same ilk." (Opp. 6 n.1.) That describes the objections; it does not justify them. *See* Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B)–(C); Discovery Procedures Pt. II.A ("a non-specific, boilerplate objection is the equivalent of no

objection at all"). Defendant has served no amended responses, and a document production does not cure a written response that never stated what was being withheld.

**IV. The Products Themselves.**

Defendant answers that the products "are readily available for sale; Hernandez is free to purchase them." (Opp. 6.) The Motion explains why that does not respond: the need is most acute for the discontinued Class-Period label versions and package configurations that "can no longer be purchased at retail and exist only in Sazerac's archives." [ECF No. 29 at 7.] Plaintiff does not seek what Defendant supposes. Plaintiff does not seek holiday or promotional packaging, labels for products never sold in Florida, or Certificates of Label Approval issued for other states. Plaintiff seeks a sealed, commercially representative exemplar of each Fireball Malt configuration sold in Florida during the Class Period, together with the comparator Fireball Whisky configurations — the two products this Court identified as the source of the alleged confusion. [ECF No. 16 at 4–5.]

**V. The Parallel-Litigation Materials, as Narrowed.**

Defendant completes the sentence from *Bhatia's* footnote 5: similarities are not "enough to require a carte blanche production of all documents." (Opp. 8.) Plaintiff agrees and seeks no carte blanche. Plaintiff identified four categories before filing (Gold Decl. Ex. 1 § VIII), and narrows further here to: (i) expert reports and disclosures served by any party in the actions in which classes were certified; (ii) deposition transcripts of Sazerac witnesses in those actions; and (iii) Sazerac's filings and discovery responses in the PAN AM proceeding quoted in the Complaint. That is "identifying the specific categories of documents sought," which is what Defendant's own authorities call for. (Opp. 7–8.) *United Oil* is not to the contrary; Defendant reads it as confined to notice and causation (Opp. 7), but the principle drawn from it is that materials from other actions are discoverable where those actions involve the same or similar claims arising from the same or similar products. *United Oil Co. v. Parts Assocs., Inc*., 227 F.R.D. 404, 410–11 (D. Md. 2005). Six identified actions against this defendant over these two products satisfy that description.

**VI. The Marketing and Channel Records.**

Defendant says planograms, shelf-placement recommendations, and sales-training materials have "no bearing" because "[t]he claim is that the labels on bottles of Fireball Malt mislead consumers." (Opp. 8.) That is not the claim this Court sustained. The Court ruled that Plaintiff challenges "Defendant's use of that label in conjunction with materially similar packaging

for a different product," and that the deception "arises from Defendant's practice of marketing Fireball Malt alongside Fireball Whisky using similar trade dress." [ECF No. 16 at 5.] Where and how the product is presented at retail is the mechanism of that practice.

Defendant also states that it "simply made clear that it would not produce documents that pertained exclusively to versions of Fireball Malt not sold in Florida." (Opp. 9.) The written responses say something else: Sazerac committed to search for "documents and communications concerning the labeling of Fireball Malt generally, as well as documents specific to the labels of Fireball Malt as sold in Florida." [ECF No. 29 at 23 (Ex. A, Resps. to Req. Nos. 3–5).] Plaintiff does not need out-of-state labels or COLAs. Plaintiff needs the development, marketing, and channel record for a nationally marketed brand, which does not become a Florida-only document by virtue of where a particular bottle was sold.

## CONCLUSION

Whatever was produced on July 31, the Opposition filed four days later continues to defend withholding each category at issue. The disputes are live. Plaintiff respectfully requests that the Court grant the Motion as narrowed herein, order Sazerac to serve amended answers and responses and to produce the discovery at issue within fourteen days, and grant such further relief as is just and proper. Plaintiff remains willing to confer as to any category.

Dated: August 11, 2026

Respectfully submitted,

*/s/ Christopher Gold*
Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, P.A.**
350 Lincoln Road, 2nd Floor
Miami Beach, FL 33139
Telephone: (305) 900-4653
Email: chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the date set forth above, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will serve a copy upon all counsel of record.

*/s/ Christopher Gold*
Christopher Gold, Esq.