**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

RAFAEL HERNANDEZ, individually and
on behalf of all others similarly situated,

Plaintiff,

v.

SAZERAC COMPANY, INC.,

Defendant.
_______________________________________/

Case No. 1:25-cv-24568-PCH

**CLASS ACTION**

**PLAINTIFF'S *CORRECTED* RENEWED MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS


*Page*

**I. INTRODUCTION** . . . . 1
**II. BACKGROUND** . . . . 3
A. Sazerac admits every element of the shared trade dress. . . . . 3
B. Sazerac built the Malt product for stores that cannot sell spirits, and chose its Florida accounts by their beer licenses. . . . . 3
C. Sazerac set one price for the Malt—the Whisky's price—and never changed it. . . . . 4
D. Sazerac ran no advertising campaign, so the Class was uniformly exposed to the same deceptive message. . . . . 4
E. Sazerac's own files record consumers buying the Malt believing it was the Whisky. . . . . 4
F. Sazerac's Florida sales data shows the size of the Class. . . . . 5
G. One category of damages discovery remains outstanding. . . . . 6
**III. LEGAL STANDARD** . . . . 6
**IV. ARGUMENT** . . . . 7
A. The Proposed Class satisfies Rule 23(a). . . . . 7
1. The Class is ascertainable. . . . . 7
2. Numerosity is established by Sazerac's own sales data. . . . . 7
3. Commonality is established by one design, one price, and one distribution decision. . . . . 8
4. Plaintiff's claim is typical of the Class's claims. . . . . 8
5. Plaintiff and his counsel are adequate. . . . . 9
B. Common questions predominate because FDUTPA measures deception objectively. . . . . 9
C. No expert is required to prove that the packaging is likely to deceive; the jury can examine the product itself. . . . . 10
1. The law requires no expert on this question. . . . . 10
2. In any event, the record is not the packaging alone: Sazerac's own complaint files answer the same question for the whole Class. . . . . 11
3. Sazerac has admitted to another court that consumers could be misled by Fireball Malt. . . . . 12
4. Sazerac has told federal courts that a malt beverage in this trade dress passes as its whisky. . . . . 13
D. Damages Are Measured by a Single Classwide Formula That Requires No Expert. . . . . 13
1. FDUTPA supplies the formula. . . . . 13
2. Plaintiff's model applies that formula with one number per unit. . . . . 14
3. Rule 23 does not require an expert damages model. . . . . 15
E. A class action is superior to any other method of adjudication. . . . . 16
F. Two courts have already certified classes against sazerac on this trade dress. . . . .. . 16
G. Certification now is proper, and the order remains subject to revision. . . . . 16
**V. CONCLUSION** . . . . 17

## TABLE OF AUTHORITIES

*Page*

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) . . . . . 16
*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) . . . . . 6, 10
*Andrews v. Sazerac Co.*, No. 23-cv-1060 (AS), 2025 U.S. Dist. LEXIS 397 (S.D.N.Y. Jan. 2, 2025) . . . . . 1
*Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225 (11th Cir. 2016) . . . . . 2, 6, 15
*Cardenas v. Toyota Motor Corp.*, No. 18-22798-CIV, 2021 WL 5811741 (S.D. Fla. Dec. 6, 2021) . . . . . 8
*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016) . . . . . 2, 9, 10, 13, 14
*Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021) . . . . . 7, 16
*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) . . . . . 15
*Cont'l Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294 (5th Cir. 1971) . . . . . 13
*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) . . . . . 7
*Davis v. Powertel, Inc.*, 776 So. 2d 971 (Fla. 1st DCA 2000) . . . . . 9
*Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687 (S.D. Fla. 2010) . . . . . 7, 8, 9, 10, 11, 15, 16
*Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011) . . . . . 6, 10
*FTC v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965) . . . . . 10
*FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008), aff'd, 356 F. App'x 358 (11th Cir. 2009) . . . . . 11
*Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) . . . . . 15
*Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of Detroit*, 50 F.3d 908 (11th Cir. 1995) . . . . . 10
*In re Checking Account Overdraft Litig.*, 307 F.R.D. 630 (S.D. Fla. 2015) . . . . . 16
*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) . . . . . 7, 9, 15
*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984) . . . . . 8
*Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084 (11th Cir. 2021) . . . . . 13
*Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689 (S.D. Fla. 2010) . . . . . 16
*Pan Am Props. Corp. v. Sazerac Co.*, No. KLCE202500119, 2025 PR App. LEXIS 1706 (P.R. Ct. App. June 27, 2025) . . . . . 12
*Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000) . . . . . 9
*Pizarro v. Sazerac Co.*, Nos. 23-CV-2751 (KMK), 23-CV-4323 (KMK), 2025 U.S. Dist. LEXIS 187959 (S.D.N.Y. Sept. 18, 2025) . . . . . 1
*Puig v. Sazerac Co.*, No. 2:23-cv-00856 (M.D. Fla. June 18, 2024) . . . . . 13
*Rollins, Inc. v. Heller*, 454 So. 2d 580 (Fla. 3d DCA 1984) . . . . . 13
*Salem v. United States Lines Co.*, 370 U.S. 31 (1962) . . . . . 2, 10
*Sazerac Co. v. Stout Brewing Co.*, No. 4:15-cv-00107 (W.D. Ky. filed Aug. 14, 2015) . . . . . 13
*Smith v. Bayer Corp.*, 564 U.S. 299 (2011) . . . . . 16
*Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213 (11th Cir. 2003) . . . . . 15
*Tershakovec v. Ford Motor Co.*, 79 F.4th 1299 (11th Cir. 2023) . . . . . 9

## TABLE OF AUTHORITIES — Continued


*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) . . . . . . . . . . 11
*United States Smelting Co. v. Parry*, 166 F. 407 (8th Cir. 1909) . . . . . . . . . . 10
*Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003) . . . . . . . . . . 9
*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) . . . . . . . . . . 7, 8, 9
*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009) . . . . . . . . . . 8
*Worsham v. A.H. Robins Co.*, 734 F.2d 676 (11th Cir. 1984) . . . . . . . . . . 10


### Statutes


Fla. Stat. § 501.201 *et seq.* . . . . . . . . . . 1
Fla. Stat. § 501.204(2) . . . . . . . . . . 10


### Rules


Fed. R. Civ. P. 23 . . . . . . . . . . passim
Fed. R. Civ. P. 23(a) . . . . . . . . . . 7
Fed. R. Civ. P. 23(a)(1) . . . . . . . . . . 7
Fed. R. Civ. P. 23(a)(2) . . . . . . . . . . 9
Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . 6
Fed. R. Civ. P. 23(b)(3)(D) . . . . . . . . . . 7
Fed. R. Civ. P. 23(c)(1)(A) . . . . . . . . . . 16
Fed. R. Civ. P. 23(c)(1)(C) . . . . . . . . . . 16
Fed. R. Civ. P. 23(c)(2)(B) . . . . . . . . . . 17
Fed. R. Civ. P. 23(c)(4) . . . . . . . . . . 17
Fed. R. Evid. 701 . . . . . . . . . . 15
Fed. R. Evid. 702 . . . . . . . . . . 15
Fed. R. Evid. 801(d)(2)(A) . . . . . . . . . . 13
Fed. R. Evid. 1006 . . . . . . . . . . 2, 15

Plaintiff Rafael Hernandez, individually and on behalf of all others similarly situated, moves under Federal Rule of Civil Procedure 23 for an order certifying the Class defined below, appointing Plaintiff as class representative, appointing Christopher Gold, Esq. of Gold Law, P.A. as class counsel, and directing the parties to confer on a proposed class notice plan. Plaintiff withdrew his first certification motion without prejudice after the Court continued the trial date, ECF No. 32, and renews it now on the record Sazerac has produced since. In support, Plaintiff submits this incorporated memorandum of law.

## I. INTRODUCTION

This is the fourth time a federal court has been asked to certify a class of consumers deceived by the same scheme deployed by the same Defendant here: dressing a cheap malt beverage in the trade dress of a famous distilled spirit. Every court to decide the question has certified. The Northern District of California certified a class of California purchasers of Fireball Malt. Answer ¶ 66. The Southern District of New York certified classes of New York purchasers of Fireball Malt — the product at issue here — and of Parrot Bay malt, *Pizarro v. Sazerac Co.*, Nos. 23-CV-2751 (KMK), 23-CV-4323 (KMK), 2025 U.S. Dist. LEXIS 187959 (S.D.N.Y. Sept. 18, 2025), and a class of Southern Comfort malt purchasers, *Andrews v. Sazerac Co.*, No. 23-cv-1060 (AS), 2025 U.S. Dist. LEXIS 397 (S.D.N.Y. Jan. 2, 2025). Sazerac ran its full defense playbook in each case. Certification was granted every time.

The claim here is a single count under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* The theory is classwide by nature: one uniform look-alike label, an objective reasonable-consumer standard that requires no individualized reliance, and one benefit-of-the-bargain damages formula — the market value of the product as it should have been delivered, less the market value of what was — that yields the same number for every purchase.

What has changed since the first motion is the record. Sazerac has produced more than 158,000 pages of documents and its Florida sales data, which tells the story. Two executives decided to make and sell the malt product and chose where it would be sold. Sazerac priced the malt at the whisky's suggested retail price and never changed that price. Sazerac ran no advertising campaign for the product, so the familiar trade dress of Fireball Whisky was the only message any purchaser ever received. Sazerac's consumer-affairs files record purchaser after purchaser reporting that they bought the Knockoff Malt product believing it was the Whisky — including a

Florida consumer writing about "the fake fireball being sold in gas stations in Florida" seven weeks after the Florida launch.

Plaintiff anticipates two foreseeable objections, and neither is the law. The first is that Plaintiff cannot prove deception under the FDUTPA without a consumer survey. But expert proof is required only in the "rare causes of action in which the law predicates recovery upon expert testimony." *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962). The question the factfinder will answer here is whether the representation "would deceive an objectively reasonable observer." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). A jury is perfectly capable of looking at two bottles and making its own determination of whether the Knockoff Malt Product "would deceive an objectively reasonable observer" without the opinion of an expert. And a jury will not be limited to the evidence of the product itself, because Sazerac's own complaint records document the confusion in the words and its own customers and employees. The second objection is that Plaintiff cannot prove damages without an economist and a conjoint survey. The Eleventh Circuit has held the opposite: "the Supreme Court did not hold that individual damages necessarily defeat predominance or that a plaintiff seeking class certification must present an expert damages model." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016). A conjoint or other complex economic analysis is not required by the law or the facts and would not assist a jury in measuring damages in this case. "FDUTPA damages are measured according to 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Carriuolo*, 823 F.3d at 986. So the measure of damages in this case is the market value of the product in the condition in which it should have been delivered—a whisky product containing 33% alcohol—minus the market value of the product or service in the condition in which it was delivered—a product with 16.5% alcohol, *i.e.* 50% of the "market value," which can be proven by Sazerac's suggested retail price and/or the price actually paid for the Product. This calculation is admissible as a summary under Federal Rule of Evidence 1006 without any economist analysis.

The Class should be certified.

## II. BACKGROUND

Citations to "Ex. __" are to the exhibits to the Declaration of Christopher Gold filed with this Motion. Exhibits 1–3, 5, 7–13, and 16 are designated Confidential or Attorneys' Eyes Only by Sazerac and are filed under seal pursuant to Local Rule 5.4.

### A. Sazerac admits every element of the shared trade dress.

Sazerac manufactures Fireball Cinnamon Whisky, a cinnamon-flavored distilled spirit sold since 1984 that Sazerac admits has achieved nationwide fame. Compl. ¶¶ 1, 18; Answer ¶¶ 1, 18. In 2020 it introduced "Fireball Cinnamon," a malt-based beverage that looks and tastes like the whisky but contains no whisky and half the alcohol. Compl. ¶ 22; Answer ¶ 22. Sazerac admits that, as sold in Florida, the malt beverage has an alcohol content of 16.5% and the whisky 33%, and that the malt product contains no whisky. Compl. ¶¶ 23, 44; Answer ¶¶ 23, 44.

Sazerac admits that both products present "the same golden-caramel color glowing through transparent 50 mL or 100 mL distilled spirit bottles sealed with red caps, with a similarly colored label that resembles burnt paper, with printed text in a similar typeface, and an image of a red dragon splitting a fireball, set between the words 'red' and 'hot.'" Compl. ¶ 27; Answer ¶ 27.

### B. [redacted].

In the launch year, [redacted].

[redacted]

Sazerac admits its "Cinnamon malt beverage is sold at retail locations that do not sell distilled spirits." Answer ¶ 39. [redacted]

**C. [redacted].**

[redacted]

**D. [redacted] so the Class was uniformly exposed to the same deceptive message.**

[redacted]

**E. [redacted].**

[redacted]

[redacted]

[redacted]

[redacted]

**F. Sazerac's Florida sales data shows the size of the Class.**

[redacted]

[redacted].

**G. One category of damages discovery remains outstanding.**

Sazerac objected to producing the syndicated retail scan data it licenses from NielsenIQ and Circana on the ground that its "licensing agreements with the information providers" bar production. Ex. 6 (Responses to Requests Nos. 22, 29, 30). That data supplies the retail prices consumers actually paid. It is the subject of Plaintiff's pending motion to compel (ECF No. 29). If the objection is sustained, Plaintiff will obtain the same data by Rule 45 subpoena to the providers. Either way the data will be in the record well before trial, and Sazerac's Rule 30(b)(6) designee will authenticate the sales and pricing figures drawn from Sazerac's own systems.

## III. LEGAL STANDARD

A plaintiff seeking class certification must satisfy Rule 23(a)'s four requirements—numerosity, commonality, typicality, and adequacy—and, for a damages class, Rule 23(b)(3)'s predominance and superiority requirements. The movant bears the burden on the current record, and the Court conducts a rigorous analysis of that showing. *Brown*, 817 F.3d at 1233–34. The analysis may overlap with the merits, but Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage"; merits questions matter only to the extent they bear on whether Rule 23's prerequisites are met. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Plaintiff does not ask the Court to resolve any doubt in his favor. He makes the affirmative showing Rule 23 requires.

This Court has performed the Rule 23 analysis in a Florida consumer-deception case and had it approved. In *Fitzpatrick v. General Mills, Inc.*, the Court certified a FDUTPA class of Florida yogurt purchasers, and the Eleventh Circuit described the resulting order as "a scholarly work reflecting careful attention to the requirements of Federal Rule of Civil Procedure 23, existing precedent and the factual background of this matter," and as "sound and in accord with federal and state law." 635 F.3d 1279, 1282 (11th Cir. 2011). The panel vacated on one, narrow ground only—that the certified class definition took individual reliance into account, which conflicted with the law and the order's own analysis—and said that "if the definition of the class had been in accord with the legal analysis, we would have readily affirmed." *Id.* The definition proposed here is the one the panel said would have followed from that analysis: all persons who

purchased the product in Florida. *See id.* at 1283 n.1. The showing below tracks that order element by element.

## IV. ARGUMENT

### A. The Proposed Class satisfies Rule 23(a).

Plaintiff moves to certify the following Class: ***All persons who purchased Fireball Malt in the State of Florida during the period beginning four years prior to the filing of this action and the date of an order granting class certification***.

#### 1. The Class is ascertainable.

Before the enumerated requirements, the Eleventh Circuit asks whether the proposed class is "adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). Nothing more is required: "administrative feasibility is not a requirement for certification under Rule 23." *Id.* The Class is defined by three objective facts—the purchase of an identified product, in an identified State, during an identified period — none of which calls for an inquiry into any purchaser's state of mind. Sazerac's own records identify the distributors it sold through and the retail chains it sold into. Ex. 3. To the extent identifying individual purchasers of a dollar product raises any question, that question belongs to manageability under Rule 23(b)(3)(D), where "[a]dministrative feasibility alone will rarely, if ever, be dispositive." *Cherry*, 986 F.3d at 1305. This Court addressed the same practical point in *Fitzpatrick*: identifying the consumers who bought a low-priced grocery product "will not be an easy process," but such issues "are not insurmountable," and the difficulty is not "in itself a sufficient basis to prevent certification of a class." 263 F.R.D. 687, 702 (S.D. Fla. 2010) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1272 (11th Cir. 2004)).

#### 2. Numerosity is established by Sazerac's own sales data.

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this Circuit, "while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *accord Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). [redacted]

[redacted] Joinder of the purchasers of a dollar product sold at that scale is impracticable. *See Cardenas v. Toyota Motor Corp.*, No. 18-22798-CIV-MORE, 2021 U.S. Dist. LEXIS 233135, at *23 (S.D. Fla. Dec. 6, 2021).

**3. Commonality is established by one design, one price, and one distribution decision.**

Commonality is a "relatively light burden." *Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 696 (S.D. Fla. 2010) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009)). It requires "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). There are several here, and each is answered with evidence that does not vary by class member: whether the admitted trade dress is likely to deceive a reasonable consumer; whether that deception was material; whether Sazerac's conduct violates FDUTPA; and how classwide damages are measured. In *Fitzpatrick* this Court found the same requirement satisfied on materially the same kind of proof, resting on the defendant's own marketing documents rather than on consumer testimony. 263 F.R.D. at 697.

[redacted]

**4. Plaintiff's claim is typical of the Class's claims.**

Typicality is satisfied where "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory," and it "may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories." *Fitzpatrick*, 263 F.R.D. at 698 (quoting *Williams*, 568 F.3d at 1358); *accord Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Plaintiff bought miniature bottles of Fireball Malt at Florida gas stations believing them to be Fireball Whisky, which he had long purchased in larger bottles from liquor stores. Compl. ¶¶ 52–57. [redacted]

[redacted] Plaintiff asserts the same single FDUTPA count, arising from the same trade dress, on the same theory, and no unique defense applies to him.

**5. Plaintiff and his counsel are adequate.**

Adequacy asks "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Only a "fundamental" conflict "going to the specific issues in controversy" defeats adequacy. *Carriuolo*, 823 F.3d at 989 (quoting *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000)). This Court applied that standard in *Fitzpatrick* by asking whether the representative was diligent, and whether proposed counsel's experience and work in the case showed it was qualified to serve. 263 F.R.D. at 699. Plaintiff seeks the same recovery on the same theory as every class member, and he is participating in discovery. Proposed Class Counsel has prosecuted this action through a contested motion to dismiss, a motion to compel, and secured the production of the record on which this motion rests, and will continue to commit the resources the case requires.

**B. Common questions predominate because FDUTPA measures deception objectively.**

FDUTPA claims have three elements: a deceptive act or unfair practice, causation, and actual damages. ECF No. 16, at 2–3. Each is provable with common evidence. Predominance is "perhaps the central and overriding prerequisite for a Rule (23)(b)(3) class," and common issues predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief." *Fitzpatrick*, 263 F.R.D. at 700 (quoting *Vega*, 564 F.3d at 1278, and *Klay*, 382 F.3d at 1255).

Deception is measured objectively. "[A] party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Carriuolo*, 823 F.3d at 984 (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. 1st DCA 2000)). The factfinder "must only determine whether" the challenged representation "would deceive an objectively reasonable observer." *Id.* at 985. The Eleventh Circuit has twice confirmed that a reliance-based predominance objection therefore fails. *Tershakovec v. Ford Motor Co.*, 79 F.4th 1299, 1306–08 (11th Cir. 2023); *Carriuolo*, 823 F.3d at 989 ("This consistency is also sufficient to establish the commonality requirement under Rule 23(a)(2).").

Reviewing this Court's order in *Fitzpatrick*, the Eleventh Circuit approved exactly this framework: the district court "repeatedly stated that a plaintiff need not prove reliance on the

allegedly false statement to recover damages under FDUTPA, but rather a plaintiff must simply prove that an objective reasonable person would have been deceived. And, this is correct." 635 F.3d at 1283. On that standard, "[w]hether an objective reasonable person would have been deceived by a deceptive act is a question susceptible to classwide proof." 263 F.R.D. at 701.

The evidence answering that question is the same for every class member. It is the package—which Sazerac admits is uniform—together with Sazerac's own documents about it. Class members need not testify about what they saw, because they all saw the same thing, and because FDUTPA does not ask what any of them thought. Materiality is likewise common: an objective standard makes a representation "material or immaterial" the same way "equally for all" class members. *Amgen*, 568 U.S. at 459.

### C. No expert is required to prove that the packaging is likely to deceive; the jury can examine the product itself.

#### 1. The law requires no expert on this question.

Expert testimony is required only in "the rare causes of action in which the law predicates recovery upon expert testimony." *Salem*, 370 U.S. at 35. It is "unnecessary" where "all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training." *Id.* (quoting *United States Smelting Co. v. Parry*, 166 F. 407, 411, 415 (8th Cir. 1909)). Two bottles on a table are primary facts of exactly that kind. The Eleventh Circuit has said the same: "there is no rule requiring expert testimony on certain issues," and a party urging one must show that the issue "is, by definition, a matter beyond the jurors." *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 685 (11th Cir. 1984). Expert testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995).

FDUTPA points the same way. The statute directs that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts" construing section 5(a)(1) of the FTC Act. Fla. Stat. § 501.204(2). The Supreme Court has held that it was not "necessary for the Commission to conduct a survey of the viewing public before it could determine that the commercials had a tendency to mislead." *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 391–92 (1965). Courts in this Circuit apply the same rule: what an advertisement conveys "is fundamentally a question of fact" that "may be resolved by the terms of the

advertisement itself," and requiring consumer-perception evidence for claims apparent from the face of the advertisement is "unduly burdensome and unnecessary." *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1189 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009).

This Court has done it. In *Fitzpatrick*, the Court certified a FDUTPA food product class and, in finding the deception question common, relied on the advertisements themselves and on the defendant's own statements. 263 F.R.D. at 697.

**2. In any event, the record is not the packaging alone: Sazerac's own complaint files answer the same question for the whole Class.**

[redacted]

[redacted]

[redacted] It is that this evidence is Sazerac's, that it is the same evidence for every class member, and that it answers the objective question in one stroke—the definition of a common question. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) (quoting Newberg and describing a common question as one where "the same evidence will suffice for each member to make a prima facie showing").

**3. Sazerac has admitted to another court that consumers could be misled by Fireball Malt.**

The Complaint pleads a proceeding in Puerto Rico in which Sazerac's malt product was the subject of an evidentiary hearing, and [redacted] The findings entered there describe these two products as this record does. The court made findings of fact that the 50 mL labels "share multiple identical distinctive elements," that the bottles are "the same size and shape, have a red cap, and the liquid inside both has the same amber color," and that "[g]iven the substantial similarity between the presentation of Fireball Cinnamon Malt Beverage and that of the 50 ml Fireball Cinnamon Whisky, an average consumer would have difficulty distinguishing between the two products." *Pan Am Props. Corp. v. Sazerac Co.*, No. KLCE202500119, 2025 PR App. LEXIS 1706, at *10–11 (P.R. Ct. App. June 27, 2025) (certified translation attached as Ex. 18). It found that Sazerac "acknowledges that, because of their similarity, the two products may compete with each other when sold in the same size," and "***acknowledges that, from a distance, it is not possible to identify which of the two 50 ml products is which.***" *Id.* at *11. It found the "potential for confusion between" them "common, reasonable, and foreseeable," *Id*. at *12, and—on the point Sazerac presses here, that the two products never meet—that Sazerac's distribution plan places the malt "in establishments where 50 ml Fireball Cinnamon Whisky is also sold, such as gas stations, convenience stores, chinchorros, and other 'down the trade' businesses." *Id.*

Sazerac also told that court what it has not told this one. It "acknowledges that its strategy is not to make efforts to differentiate Fireball Cinnamon Malt Beverage from Fireball Cinnamon Whisky products, but instead to focus on 'market access,'" and that it created the malt product because "[i]n some states in the United States, Fireball whisky cannot be sold in convenience stores." *Id.* at *14–15. Sazerac answered the Complaint's allegations about that proceeding by saying that the opinion "speaks for itself" and by disputing the translation. Answer ¶¶ 24, 25, 30–32. The certified translation filed with this motion answers that objection. Plaintiff's pending motion to compel separately seeks Sazerac's filings, discovery responses, and the transcripts of its witnesses' testimony in that proceeding.

**4. Sazerac has told federal courts that a malt beverage in this trade dress passes as its whisky.**

Notably, in 2015 Sazerac sued a brewer over a cinnamon-flavored malt beverage sold in a clear bottle with a burnt-edge label. Its complaint alleged that the brewer "introduced an alcoholic malt beverage designed to compete with Sazerac's product and adopted the confusingly similar FIRE FLASK mark and product packaging in order to pass off its own product as Sazerac's FIREBALL cinnamon whisky"; that "[a]s with Sazerac's FIREBALL cinnamon whisky, FIRE FLASK malt specialty beer is golden brown in color, cinnamon-flavored, and is marketed in clear bottles featuring a label with the same color combination of Sazerac's FIREBALL Trade Dress"; that the two products "are competing, or will compete, in identical retail outlets"; and that the resemblance was "likely to mislead persons in the ordinary course of purchasing Defendant's goods and induce them to believe they are purchasing genuine goods of Sazerac." Complaint ¶¶ 26, 31, 36, 68, *Sazerac Co. v. Stout Brewing Co.*, No. 4:15-cv-00107 (W.D. Ky. filed Aug. 14, 2015) (Ex. 19).

A party's own pleading in another action is its own statement, admissible against it here. Fed. R. Evid. 801(d)(2)(A); *see Cont'l Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971). Sazerac's position, taken under Rule 11 against a different adversary, was that a cinnamon malt beverage dressed like Fireball whisky will be taken by ordinary purchasers for the whisky itself. That is the proposition Sazerac disputes here, and its own filings are classwide evidence of it. Plaintiff does not contend that the brand name on the malt bottle is by itself deceptive, and nothing in this motion asks the Court so to hold. *Cf. Puig v. Sazerac Co.*, No. 2:23-cv-00856 (M.D. Fla. June 18, 2024). The claim is the one this Court has described: marketing the malt alongside the whisky using similar trade dress. ECF No. 16, at 5.

**D. Damages Are Measured by a Single Classwide Formula That Requires No Expert.**

**1. FDUTPA supplies the formula.**

FDUTPA actual damages "are measured according to 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) (quoting *Carriuolo*, 823 F.3d at 986, quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)). Both sides of that subtraction are market values, not sums that any particular purchaser happened to pay. That

is why the measure "provides a standardized class-wide damages figure because the plaintiff's out-of-pocket payment is immaterial[.]" *Carriuolo*, 823 F.3d at 986–87.

**2. Plaintiff's model applies that formula with one number per unit.**

The product as it should have been delivered was Fireball—the cinnamon whisky whose trade dress the bottle wears, at 33% alcohol. What was delivered was a malt beverage containing no whisky, at 16.5% alcohol. Answer ¶¶ 22, 23, 44. Neither figure varies by purchaser.

The market value of the product as it should have been delivered can be proved two ways on this record, and the jury may take either. The first is the price the product actually commanded at retail, which the syndicated scan data addressed above will show. The second is the suggested retail price Sazerac itself set and swore to: [redacted] Sazerac's Rule 30(b)(6) designee and the employees who set its prices will testify to both figures; they are the witnesses with knowledge of what Sazerac charged, what it instructed retailers to charge, and why.

The market value of what was in fact delivered is the second figure, and Plaintiff's measure of it is one-half. The purchaser received a beverage with none of the represented product's distilled spirit and half of its alcohol, sold at the identical price. Damages are therefore 50% of the market value of each unit purchased—one percentage, applied to every purchase in the Class, with no individualized inquiry of any kind. The jury will be asked to award a single number: total Florida sales of Fireball Malt during the class period, at the market value the jury finds, multiplied by one-half. Nothing in that computation depends on who the purchaser was, what he thought, or why he bought.

The inputs come from records and from Sazerac's own witnesses, not from opinion testimony. Sazerac's data supplies the units and the sales figures. Ex. 13. Sazerac's price model supplies the prices it set. Ex. 1. The syndicated retail scan data supplies the prices consumers actually paid, and is the subject of the pending motion to compel or, failing that, a Rule 45 subpoena to the providers. Two evidentiary rules carry the rest. Testimony by a company's officers and employees about its charges and values, based on what they know from their positions, is "of

a type traditionally and properly considered lay witness testimony, as it was not based on specialized knowledge subject to Rule 702." *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003); *see id.* at 1222 (such testimony is "one of the prototypical areas intended to remain undisturbed" by Rule 701's amendment). Sazerac's Rule 30(b)(6) designee and its pricing personnel are those witnesses. The arithmetic performed on their records comes in as a summary: Federal Rule of Evidence 1006 permits "a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court," provided the underlying records are made available to the other party. The classwide figure is exactly that: one calculation drawn from Sazerac's own sales and pricing records.

**3. Rule 23 does not require an expert damages model.**

The Eleventh Circuit has addressed the question directly. "[T]he Supreme Court did not hold that individual damages necessarily defeat predominance or that a plaintiff seeking class certification must present an expert damages model." *Brown*, 817 F.3d at 1239. What *Comcast* requires is fit: "a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). "Calculations need not be exact." *Id.*

This model fits the theory precisely. The liability theory is that Sazerac sold a malt beverage in the whisky's dress and charged the whisky's price. The damages measure is the portion of that price attributable to what the purchaser did not get. At this stage Plaintiff need not compute the class's damages to the dollar: "all that the named plaintiffs had to prove was that a reliable damages methodology existed, not the actual damages plaintiffs sustained." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023).

Even a model requiring individual computation would not defeat predominance. "Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259–60 (11th Cir. 2004). Individual damages defeat predominance "primarily when there are significant individualized questions going to liability." *Id.* at 1260. There are none here. And in this Court's *Fitzpatrick* decision, individualized premium questions did not defeat predominance even without a classwide model, because the Court was "persuaded that a workable solution can be fashioned." 263 F.R.D. at 701.

**E. A class action is superior to any other method of adjudication.**

Superiority is at its height where individual claims are worth a few dollars. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). This Court put it concretely in *Fitzpatrick*: an amount in controversy "in the range of one dollar per purchase" is "simply too insignificant to make the claim worth pursuing for any litigant or attorney." 263 F.R.D. at 702. [redacted] Half of that is the individual claim. No rational consumer will litigate it alone. *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692–93 n.2 (S.D. Fla. 2010). [redacted] Concentrating Florida purchasers' claims in a Florida forum under a Florida statute presents no manageability problem, and manageability is judged comparatively: "[a]dministrative feasibility alone will rarely, if ever, be dispositive." *Cherry*, 986 F.3d at 1305.

**F. Two courts have already certified classes against Sazerac on this trade dress.**

The Supreme Court "would expect federal courts to apply principles of comity to each other's class certification decisions when addressing a common dispute." *Smith v. Bayer Corp.*, 564 U.S. 299, 316–17 (2011); *see In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 649 (S.D. Fla. 2015). Sazerac has verified under oath that *Marquez*, *Myers*, *Pizarro*, and *Puig* each "addressed Fireball Malt." Ex. 17. Two of those courts reached certification, and each certified. The defenses Sazerac raised there—label variation, individualized deception, and attacks on the damages model—did not defeat certification, and FDUTPA's objective standard is, if anything, more favorable to certification than the standards applied in those cases.

**G. Certification now is proper, and the order remains subject to revision.**

Rule 23 directs certification "at an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), and preserves the Court's power to revisit it: "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Discovery continues, including the retail pricing data addressed above and Sazerac's Rule 30(b)(6) deposition. None of it bears on whether the questions in this case are common — they are, because Sazerac made them so — and the Court retains full authority to refine the class definition or the damages mechanism as the record develops.

## V. CONCLUSION

Sazerac put a malt beverage in its whisky's bottle, sent it to stores that cannot sell whisky, charged the whisky's price, and declined to tell anyone the difference. Its own employees wrote down what happened next. Whether that packaging is likely to deceive a reasonable consumer is one question with one answer that will resolve a central question in the claims of all Florida Class members in a single stroke, and the jury can answer it by looking at the two bottles themselves. Damages are a fixed percentage of market value, computed on Sazerac's own records. Plaintiff requests an order (1) certifying the Class defined herein; (2) appointing Plaintiff as class representative; (3) appointing Christopher Gold, Esq. of Gold Law, P.A. as class counsel; (4) directing the parties to confer on a class notice plan under Rule 23(c)(2)(B); and (5) granting any further relief the Court deems just and proper. In the alternative, Plaintiff requests certification of the liability issues under Rule 23(c)(4).

Dated: September 18, 2026

Respectfully submitted,

*/s/ Christopher Gold*
Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, P.A.**
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2026, a copy of the foregoing was filed on the ECF and thereby served on all counsel of record.

*/s/ Christopher Gold*
Christopher Gold, Esq.