**REDACTED VERSION**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

RAFAEL HERNANDEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SAZERAC COMPANY, INC.,

Defendant.
_______________________________________/

Case No. 1:25-cv-24568-PCH/LFL

**CLASS ACTION**

**PLAINTIFF'S REPLY IN SUPPORT OF HIS CORRECTED**
**<u>RENEWED MOTION FOR CLASS CERTIFICATION</u>**

## I. INTRODUCTION

Sazerac cannot escape the fact the two other district courts in New York and California have each certified classes of consumers based on the same facts of this case. So Sazerac does not dispute most of what Plaintiff's motion establishes. It offers no argument on numerosity or commonality. It does not dispute that FDUTPA asks an objective question—whether the trade dress would deceive a reasonable consumer—or that the evidence answering that question is the same for every purchaser. It agrees on the damages formula: "the value of the product as promised minus the value of the product delivered." ECF No. 48 ("Opposition" or "Opp.") at 10. And it says nothing about Plaintiff's alternative request to certify the liability issues under Rule 23(c)(4). ECF No. 45 ("Motion" or "Mot.") at 17.

Instead, the opposition rests principally on misrepresentations of Plaintiff's deposition testimony. Sazerac argues that [redacted] defeat standing, typicality, adequacy, and predominance. Putting aside the mischaracterization of Plaintiff's testimony, the Eleventh Circuit rejected that argument in the case Sazerac cites. Under FDUTPA, "[a] class member's subjective sophistication or knowledge is irrelevant because the liability inquiry states objective elements," and the injury "occurred when class members paid a price premium at the time of lease or purchase." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 990 (11th Cir. 2016). The testimony also does not say what Sazerac says it does. [redacted]

REDACTED VERSION

[redacted] Hernandez Dep. 89:19–90:2 (Ex. 20). Sazerac tellingly left those pages of the deposition transcript out of its exhibit. [redacted] Brown Decl. ¶ 13, ECF No. 51.

## II. ARGUMENT

### A. Hernandez has standing because he paid for Fireball Whisky and received a malt beverage he would not have bought.

Only the named plaintiff must establish standing at this stage. *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 888 (11th Cir. 2023). Hernandez's injury is money: he paid for what he believed was Fireball Cinnamon Whisky and received a malt beverage with no whisky and half the alcohol. ECF No. 1, ("Compl.") ¶¶ 23, 44, 57, 60–61; Answer ¶¶ 23, 44. "[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Plaintiff's testimony establishes each element. [redacted] Hernandez Dep. 89:19–90:2. [redacted] *Id.* at 90:4–6. [redacted] *Id.* at 90:11–13. [redacted] *Id.* at 92:8–11. [redacted] *Id.* at 83:21–84:8.

Sazerac's account depends on out-of-context fragments of Plaintiff's testimony to support its outrageous position that manufacturers can sell any "snake oil" to the market with impunity—so long as consumers cannot tell the difference. [redacted] Opp. 3. [redacted] Hernandez Dep. 79:3–9. [redacted] Opp.

6. [redacted] Hernandez Dep. 73:20–74:7. [redacted] Opp. 6. [redacted] Whether he received Fireball for that price is the merits question every class member shares, and FDUTPA answers it by market value, not by any one purchaser's satisfaction: "the proper question is not how much the erroneous sticker may have reduced the vehicle's perceived value for any individual purchaser or lessee." *Carriuolo*, 823 F.3d at 986.

**B. Hernandez is typical and adequate because FDUTPA makes each purchaser's reasons for buying irrelevant.**

Sazerac argues that [redacted] Opp. 7–8 (citing *Carriuolo*, 823 F.3d at 989). The case Sazerac cites forecloses the argument. In *Carriuolo*, General Motors identified supposed conflicts arising because class members "may have had varying levels of sophistication and access to information at the time of lease or purchase." *Carriuolo*, 823 F.3d at 989–90. The Eleventh Circuit held: "A class member's subjective sophistication or knowledge is irrelevant because the liability inquiry states objective elements. And the fact of resale is immaterial because the injury occurred when class members paid a price premium at the time of lease or purchase. None of these factors suffices as a fundamental conflict." *Id.* at 990. A conflict defeats adequacy only if it is "a fundamental one, going to the specific issues in controversy." *Id.* at 989 (quoting *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000)).

This Court applied the same rule in *Fitzpatrick*. General Mills argued that "different plaintiffs may have purchased Yo-Plus for different reasons, some entirely unrelated to Yo-Plus' purported digestive health benefits." *Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 700 (S.D. Fla. 2010), *vacated on other grounds*, 635 F.3d 1279 (11th Cir. 2011). This Court answered that a FDUTPA plaintiff "need not allege that the deceptive act motivated his or her decision to purchase Yo-Plus, but only that an objective reasonable person would have been deceived by it." *Id.* at 700–01. The common question that applies uniformly to Hernandez as it does to each Class member is whether an objective reasonable person would be deceived by Sazerac's malt product.

[redacted] Opp. 6, 8. [redacted]

**REDACTED VERSION**

[redacted] Hernandez Dep. 49:14–21. [redacted] *Id.* at 95:3–5 [redacted] And no purchaser benefits from paying the Whisky's price for a malt beverage; a consumer who wants less alcohol is served by an accurate label, not a false one.

Sazerac's suggestion that Hernandez was "[g]oaded by lawyers," Opp. 1, is false, and also does not bear on adequacy. How a consumer learns he was deceived says nothing about whether he was. Hernandez Dep. 71:12–16.[1] That is the claim in this case. Hernandez has answered interrogatories under oath, sat for a deposition, and will continue to serve. Hernandez Decl. ¶¶ 9–11 (Ex. 21).

**C. Every Class member was injured at the point of purchase, so standing is a common question.**

Sazerac invokes *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019), and argues that some purchasers "may prefer lower alcohol," may have known the product was a malt beverage, or may not care about its base alcohol. Opp. 8–9. *Cordoba* does not reach this class. The court there declined to hold "that a court is required to ensure that the class definition does not include *any* individuals who do not have standing before certifying a class." 942 F.3d at 1276. It held only that a district court must consider predominance "when it appears that a large portion of the class does not have standing, . . . and making that determination for these members of the class will require individualized inquiries." *Id.* at 1277.

Neither condition exists here. The class is defined by the injuring transaction itself. Every member bought Fireball Malt, in the Whisky's trade dress, at the Whisky's price. Mot. 4; *see* Opp. 3–4 (not disputing that the two 50 mL products are "priced more-or-less the same"). Under FDUTPA the injury "occurred when class members paid a price premium at the time of…purchase." *Carriuolo*, 823 F.3d at 990. That is the theory Sazerac itself recognizes as classwide: a "price" that "would apply to all purchasers." Opp. 9.

Sazerac's variations are "a reliance inquiry by another name." *Carriuolo*, 823 F.3d at 985. In *Carriuolo*, General Motors argued that "some class members may have known that the safety

---

[1] The exhibit Sazerac attaches as the advertisement, Magid Decl. Ex. B, [redacted] Hernandez Dep. 72:2–5.

**REDACTED VERSION**

ratings were inaccurate" and that "some may not have been aware of the Monroney sticker." *Id.* The court held that "***the mental state of each class member is irrelevant***." *Id.* (emphasis added). And a purchaser who "subjectively valued the vehicle equally with or without the accurate Monroney sticker" still "could have suffered a loss," because market value, not personal valuation, is the measure. *Id.* at 987. Moreover, Sazerac's position is mere conjecture and is entirely speculative. Sazerac's only showing that some purchasers may prefer lower alcohol is an industry article about low-alcohol trends that does not mention Fireball Malt or Florida, Opp. 9, [redacted].

Sazerac's remaining points confirm that the questions are common. It says the front label reads "Malt Beverage," Opp. 2 (citing Brown Decl. ¶ 14), [redacted]. Each is a defense to the objective question, and each is the same for every class member. "Rule 23(b)(3) requires a showing that ***questions*** common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (original emphasis). Sazerac relies on the same disclosure for every purchaser. *See* Opp. 2. On the 50 mL bottle, the fine print at the bottom, beneath the bottler's name and address, reads in full: [redacted]" Brown Decl. Ex. B, ECF No. 51-2. Whether a reasonable consumer would learn from that line, which itself says "WHISKY," that the bottle contains no whisky is a question the jury will answer once, for everyone.

[redacted] Brown Decl. ¶ 13. [redacted] Whether the labels was likely to mislead reasonable consumers about what was in the bottle is the common question at the center of this case. [redacted] Helo Decl. ¶¶ 4–5, [redacted] not how

REDACTED VERSION

many were misled. Hernandez's testimony shows why the jury must decide the question. [redacted] *id.* at 53:20–54:15; [redacted] *id.* at 55:19–56:5; [redacted] *id.* at 69:9–14; [redacted] *id.* at 84:14–18.

**D. The damages methodology fits the theory because every value driver sazerac names is the same on both sides of the FDUTPA subtraction.**

A damages model "must measure only those damages attributable to" the theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). At certification, "all that the named plaintiffs had to prove was that a reliable damages methodology existed, not the actual damages plaintiffs sustained." *Green-Cooper*, 73 F.4th at 893.

Sazerac agrees on the formula. Opp. 10. Its objection is that the model ignores convenience, taste, and consumer preferences. Opp. 10–11. [redacted] *Id.* at 10. The product as promised was a bottle of Fireball Cinnamon Whisky on the counter of the gas station where the purchaser stopped. The product delivered was a bottle in the same trade dress, at the same counter, at the same price, carrying what Sazerac calls "the Fireball flavor." Opp. 1, 3–4. [redacted] Brown Decl. ¶ 4. Convenience is a feature of where the bottle was sold, and the promised and delivered products were sold in the same place. Taste is a feature Sazerac built in so that the two would match. What differs is what is in the bottle: ***no whisky***, and ***16.5% alcohol rather than 33%.*** Answer ¶¶ 23, 44. A model that holds every other variable constant and measures that difference measures "only those damages attributable to" the deception. *Comcast*, 569 U.S. at 35.

[redacted] Brown Decl. ¶ 5 & Ex. A. [redacted] *Id.* ¶¶ 6–10. [redacted] In this

case, the place of purchase is the same on both sides of the subtraction. [redacted] *Id.* ¶ 10. [redacted] Its members were sold a malt beverage, in the Whisky's trade dress, at the Whisky's price, in stores where Sazerac says the Whisky itself cannot be sold. Opp. 1 (citing Brown Decl. ¶ 11).

[redacted] Opp. 10, proves the point. [redacted] Hernandez Dep. 40:12–44:17, 48:1–9. [redacted]

FDUTPA also forecloses Sazerac's focus on how purchasers value the product. The benefit-of-the-bargain measure "provides a standardized class-wide damages figure because the plaintiff's out-of-pocket payment is immaterial." *Carriuolo*, 823 F.3d at 986. In *Carriuolo*, General Motors "received the same benefit of the bargain from the sale . . . to each class member . . . because a vehicle's market value can be measured objectively." *Id.* at 987.

Sazerac's remaining objection is that the proportion—one-half—is asserted rather than measured. Opp. 11. That is a dispute about the value of a single input, and it is the same dispute for every bottle sold. Whatever the jury finds the delivered product to be worth relative to the promised one will be one figure applied to Sazerac's own unit data. Ex. 13. That question is common by definition, and Rule 23 does not require that it be answered now or by an expert. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016). If the Court prefers to reserve damages, Plaintiff requested in the alternative that the Court certify the liability issues under Rule 23(c)(4). Mot. 17. Sazerac does not respond to that request.

### E. Class Membership Turns on One Objective Fact, and Sazerac's Own Evidence Makes It Verifiable.

Sazerac argues that purchasers of [redacted] bottle will lack receipts, that their claims will be uncorroborated, and that Whisky purchasers will file claims too. Opp. 11–13 (citing *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003)). Administrative feasibility "is not a requirement for certification under Rule 23." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). It bears only on manageability, and "[t]he manageability inquiry focuses

on whether a class action 'will create relatively more management problems than any of the alternatives,' not whether it will create manageability problems in an absolute sense." *Id.* (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004)). The alternative here is no adjudication at all of claims [redacted]. Hernandez Dep. 79:11–80:4.

Sazerac's concern about Whisky purchasers answers itself. Sazerac tells the Court, citing its own declarant, that in Florida, Fireball Whisky "may only be sold at liquor stores (including supermarkets licensed to sell distilled spirits)," and that Fireball Malt was developed for retailers licensed to sell beer and malt beverages. Opp. 1–2 (citing Brown Decl. ¶¶ 11–12). A Florida purchaser who bought a bottle of Fireball at a gas station or convenience store bought Fireball Malt. That is a fact a claim form can ask, and Sazerac's records identify the distributors and retail chains it sold through. Ex. 3. Sazerac's total exposure, moreover, is computed from its own unit sales, Ex. 13, not from the number of claims submitted.

*Perez* is not this case. Class membership there required proof that each person "ingested Metabolife 356 at the dosage levels recommended by the Defendant," 218 F.R.D. at 265, for an over-the-counter supplement sold alongside "at least two others of which have very similar names," *id.* at 269, in a medical-monitoring case whose elements would "require many individualized determinations," *id.* at 271. The Court denied certification because the classes were not adequately defined and on Rule 23(a) grounds, without reaching Rule 23(b). *Id.* at 266–67, 272–73. *Perez* also predates *Cherry* by eighteen years. And seven years after *Perez*, this Court certified a FDUTPA class of yogurt purchasers whose individual claims were worth "something in the range of one dollar per purchase," recognizing that identifying them "will not be an easy process" but that the difficulty was not "in itself a sufficient basis to prevent certification of a class." *Fitzpatrick*, 263 F.R.D. at 702 (quoting *Klay*, 382 F.3d at 1272).

## III. CONCLUSION

Sazerac's opposition asks the Court to measure a FDUTPA claim by one consumer's reasons for buying (as mischaracterized by Sazerac). FDUTPA asks an objective question, and the evidence answers it the same way for every Florida purchaser. The Court should grant Plaintiff's Corrected Renewed Motion for Class Certification, ECF No. 45, or, in the alternative, certify the liability issues under Rule 23(c)(4).

**REDACTED VERSION**

Dated: October 8, 2026

Respectfully submitted,

*/s/ Christopher Gold*
Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, P.A.**
350 Lincoln Road, 2nd Floor
Miami Beach, FL 33139
Telephone: (305) 900-4653
Email: chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth above, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Christopher Gold*
Christopher Gold, Esq.